In re the MARRIAGE OF Randall L. SWENKA and Kathryn M. Swenka.

Upon the Petition of Randall L. Swenka, Appellant,

And Concerning

Kathryn M. Swenka, Appellee.

No. 97–0525.

Court of Appeals of Iowa.

Jan. 28, 1998.

Stephen B. Jackson and Stephen B. Jackson, Jr. of the Jackson Law Office, Cedar Rapids, for appellant.

Kenneth F. Dolezal of Dolezal, Lindeman & Davison, Cedar Rapids, for appellee.

Heard by CADY, C.J., and SACKETT and STREIT, JJ.

STREIT, Judge.

Both mother and father appeal the provisions of a custody order. The trial court ordered joint physical care and each parent contends they should have been designated the primary physical care giver of the children. We modify the trial court's order of joint physical care because it is not in the best interests of the children and award the father primary physical care of the children.

### I. Background & Facts.

Randy and Katie Swenka were married in 1989. Randy was previously married and divorced and has primary physical care of his daughter, Lillian. Randy and Katie had two children: Ryan, born in January 1990; and Zachary, born in June 1993.

Randy filed for divorce in March of 1995. He was awarded temporary primary physical care of Ryan and Zachary. Trial was in September of 1996. The custody provision of the final decree awarded the parties joint legal custody of the children. Randy was awarded "primary parental care of the children during the school year" and Katie "primary parental care ... during the summer break." The trial court defined the custody arrangement in detail, ordering the children to relocate between the parties' homes up to four times per week. The court ordered Katie to pay $50 per month in child support.

Randy motioned for modification, substitution, and/or clarification of the judgment pursuant to Iowa Rule of Civil Procedure 179(b). The court overruled the motion, but stated it fashioned the parental care schedule with the intent of giving the children "about the same amount of time with each parent." Randy appeals the custody provisions of the dissolution decree, contending the court ordered joint physical care is not in the best interests of the children. Katie cross-appeals contending the court erred in awarding primary care of the children to Randy.

### II. Standard of Review.

Review of the custody provisions of a divorce decree is de novo. Iowa R.App. P. 4. *See In re Marriage of Miller,* 532 N.W.2d 160, 162 (Iowa App.1995). We are not bound by the district court's findings of fact, but do give them deference because the district court had the opportunity to view, firsthand, the demeanor of the witnesses when testifying. *Id.; In re Marriage of Brown,* 487 N.W.2d 331, 332 (Iowa 1992). The controlling consideration in child custody cases is always what is in the best interests of the children. *Heyer v. Peterson,* 307 N.W.2d 1, 7 (Iowa 1981).

### III. Joint Physical Custody.

Joint physical care means:

[A]n award of physical care of a minor child to both joint legal custodial parents under which both parents have rights and responsibilities toward the child including, but not limited to, shared parenting time with the child, maintaining homes for the child, providing routine care for the child and under which neither parent has physical care rights superior to those of the other parent.

1997 Iowa Acts Ch. 175, § 183. Under this definition, the trial court's custody provision is an award of joint physical care to Randy and Katie. Without using the terminology "joint physical care," the court set up a joint physical care arrangement. The custody provisions provide about the same amount of time to each parent. The arrangement requires both Randy and Katie to share parenting time with the children, maintain homes for them, and provide routine child care.

Although there is a multitude of case law stating joint physical care is strongly disfavored, *see e.g. In re Marriage of Roberts,* 545 N.W.2d 340, 342 (Iowa App.1996); *In re Marriage of Brainard,* 523 N.W.2d 611, 615 (Iowa App.1994); *In re Marriage of Coulter,* 502 N.W.2d 168, 171 (Iowa App.1993), the legislature recently proclaimed joint physical care to be a viable disposition of a custody dispute if in the best interests of the children. 1997 Iowa Acts Ch. 175, § 199. The

new legislation states joint physical care may be awarded when it is in the best interests of the children and "would preserve the relationship between each parent and the children." *Id.*

■ In light of the new legislation, we decide whether the trial court's award of joint physical care was in the best interests of the Swenka children and whether it would preserve the relationship between each parent and the children. As it stands, the custody provision requires the children be shuttled back and forth between the parties numerous times in a week. If Katie lives within twenty miles of the children, every other week the children will be uprooted from their home with Randy to stay with Katie from Thursday, immediately after school, until Monday, immediately before school. Just as they have settled in at Katie's, they will return to Randy's on Monday for one night and then back to Katie's on Tuesday after school. On Wednesday after school they return to Randy's. Such a schedule would be unstable, if not chaotic, for an adult. To children, such instability could be devastating. An attempt to provide equal physical care may be harmful and disruptive by depriving children of a necessary sense of stability. *In re Marriage of Levsen,* 510 N.W.2d 892, 894 (Iowa App. 1993).

Under the provisions of the trial court's decree, if Katie lived outside twenty miles of Randy, the children spend every other weekend with Katie until Monday morning and Wednesday nights until Thursday morning with Katie. Essentially they would begin two days each school week at Katie's house and three at Randy's. Although not as disruptive as if Katie lived within twenty miles, the children's lives would still lack stability. In addition to the chaos during the school year, the children alternate holidays between the parents and switch primary residences every summer.

Such an arrangement is not doomed for failure. If the parents of the children are able to cooperate and respect each other's parenting and lifestyles, a joint care arrangement can work. Katie and Randy, however, can not cooperate and do not respect the parenting or lifestyles of the other. Katie has on more than one occasion reported Randy to State authorities for suspected abuse of the children. She claims he is a cold and self-centered person. Randy contends Katie makes questionable and impulsive decisions and is irresponsible. Each parent blames the other for the children's problems. For example, both think the other is at fault for Zachary's regression from using the toilet to needing diapers.

Although joint physical care arrangements can be in the best interests of children, after de novo review, we determine it is not here. The constant relocating would deprive the children of needed stability and these parents are not in the frame of mind to successfully support a joint physical care relationship. Rather than help preserve the relationship between the children and each of their parents, this arrangement would be destructive to the lives of the children.

### IV. Primary Physical Custody of the Two Boys.

■ Because we determine it is not in the best interests of the children to be in a joint physical care relationship with their parents, one of the parents must be selected as the primary physical care giver. The parent who can administer most effectively to the long-term best interests of the children and place them in an environment that will foster healthy physical and emotional lives is chosen as primary physical care giver. *In Re Marriage of Daniels,* 568 N.W.2d 51, 53 (Iowa App.1997). Randy argues a factor weighing in his favor is that a trial court already ruled he should have primary physical custody of the children in a temporary hearing on custody. This fact does give him an advantage. Temporary orders awarding physical custody create no presumption that parent is the preferred parent in a final custody decision *See In re Marriage of Short,* 373 N.W.2d 158, 160 (Iowa App.1985). The trial court here also ordered primary physical care with Randy in the final decree.

Both parents are suitable caretakers for the children. Randy, however, is more suited to be the primary physical care giver.

Randy is stable, mature, and financially secure. Although he does not have an advantage because he was awarded custody at the temporary hearing, he did a good job caring for the boys and Lillian for two years after the temporary order was entered. He is actively involved with the lives of the boys, participating in their activities, monitoring the time they spend watching television, and reading books with them. He properly feeds, clothes, and bathes the children. He cares for them when they are sick.

With Randy as the primary physical care giver, the boys will continue to live in the family home and attend the school where Ryan was enrolled. They will continue a daily relationship with their half-sister, Lillian, another factor in our decision. *See In re Marriage of Pundt,* 547 N.W.2d 243, 247 (Iowa App.1996)(recognizing a strong public policy of keeping siblings together following divorce so as not to deprive children the important benefit of growing up together). There is a span of five years between Lillian and Ryan and eight years between Lillian and Zachary. Although Lillian and the boys are half-siblings, they share a bond as strong as full siblings. The relationship is such that the presumption of keeping full siblings together applies. The boys have never lived without Lillian in their home. Separating them from Lillian would add to the trauma of the divorce and further destroy the remaining semblance of familial ties. *See id.*

The record leaves little doubt Katie loves her children. She is, however, less mature than Randy and more self-oriented. She is not as likely to put the interests of her children before her own. She is less patient than Randy and is quick tempered. She is not as strong or consistent of a disciplinarian as Randy. Although Katie claims she would encourage the boys to continue a relationship with Lillian and Randy if she had primary physical care, her behavior through this litigation places that claim in doubt. Randy, on the other hand, has demonstrated an ability to cooperate with Lillian's mother, his first ex-wife, in raising Lillian and with Katie on visitation issues.

Ryan and Zachary's best interests are served by awarding Randy primary physical care. With Randy they will retain a sense of stability and security.

This decision necessitates a modification of the trial court's visitation provisions with Katie. Katie shall have reasonable and liberal visitation as the parties may agree. If they do not agree, Katie shall have visitation with the boys every other Friday commencing at 5:30 p.m. and ending the following Monday. Katie is entitled to four weeks visitation with the boys in the summer as the parties may agree. The four weeks will not be divided into smaller than one-week increments. If the parties do not agree, the summer visitation shall be exercised in two two-week increments, the last two complete weeks of June and July. The school breaks and holidays of the parties will be divided as ordered by the trial court.

The child support provision of the decree is also modified. Katie filed an affidavit with the court on January 22, 1997, stating her net monthly income was $821 per month. She amended her affidavit, stating her net monthly income was $317. There is no explanation in the record why Katie cannot earn $821 per month. We attribute an income of $821 per month to Katie in calculating her child support obligation. Katie is ordered to pay $195 per month as child support. The other provisions of the trial court's order shall remain the same.

**AFFIRMED AS MODIFIED.**