# IN THE COURT OF APPEALS OF IOWA

No. 14-0542
Filed January 14, 2015

IN RE THE MARRIAGE OF KYLE LOU RICKE
AND JILL DIONNE RICKE

Upon the Petition of
**KYLE LOU RICKE,**
        Petitioner-Appellee,

**And Concerning**
**JILL DIONNE RICKE,**
        Respondent-Appellant.
_____


        Appeal from the Iowa District Court for Kossuth County, Don E. Courtney,

Judge.


        Jill Ricke appeals the physical care provisions of the decree dissolving her

marriage to Kyle Ricke.  **AFFIRMED AS MODIFIED.**


        Sarah A. Reindl of Reindl Law Firm, Mason City, for appellant.

        Joseph J. Straub Jr. of Straub Law Offices, Algona, for appellee.


        Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

Jill Ricke appeals the physical care provisions of the decree dissolving her marriage to Kyle Ricke, which ordered physical care of the parties' child with Kyle. We affirm as modified.

## I.    *Background Facts and Proceedings*

Jill and Kyle married in 2006 and divorced in 2014. It was the third marriage for Jill and the first marriage for Kyle. Their son, K.R., was born in 2006. Jill also has child from a previous relationship, K.C., who was born in July 1999.

Jill, age thirty-eight, is not employed. Due to numerous medical conditions, Jill was generally not employed during the parties' marriage and was the primary caretaker for K.R.[1] For her medical conditions, Jill was prescribed a variety of pain medications, which she used daily and in significant quantities for the duration of the parties' marriage. Some of the pain medications are considered to be a narcotic or opiate-based.

Kyle, age thirty-two, has been employed at Cozzini, Inc. for seven years. He earns $18.96 per hour and works an average of forty hours per week with some overtime. Kyle provides medical insurance for the family.

The parties separated in March 2012, following a dispute on the way home from a casino. The incident resulted in a domestic abuse assault charge against Kyle, and a no contact order was entered with Jill as the protected party.[2]

---

[1] Jill's short-term employments at Rabiner Treatment Center and the Good Samaritan Society resulted in her resignation or termination.
[2] The no contact order was later amended to allow written and telephonic communication between the parties.

Kyle later pled guilty to obstruction of emergency communication, a simple misdemeanor, and admitted he threw Jill's cell phone out the window of the car. The assault charge was dismissed and the no contact order was lifted in January 2013.

Meanwhile, Kyle filed a petition for dissolution in April 2012. A hearing on temporary matters came before the court later that month. In the several weeks prior to the hearing on temporary matters, Jill had two public episodes[3] which the district court found to "support a finding that she is abusing prescription pain medications and that this abuse impairs her ability to function while under the influence of the medications." The court acknowledged Jill's testimony that she had recently cut back on her pain medications and that she was being treated at Mayo Clinic for pain management. However, the court found, "The combination of her ailments and the prescription drug use have impaired [Jill's] ability to function appropriately in the capacity necessary to provide safe and adequate care for her children at all times."[4] The court entered a temporary order placing

---

[3] In one of these incidents, Jill presented at the emergency room stating she had a reaction to her medication. She had not made arrangements for K.R., even though she usually picked him up from school. Someone from the school brought K.R. to the hospital. In another incident, which Jill did not recall, an Algona police officer was dispatched to Kum and Go on a report from the store clerk that Jill was having a conversation with a cardboard cutout, telling the cutout she was looking for her child. She was supposed to pick up K.R. from school shortly after this incident. In another incident, which Jill also did not recall, Jill drove K.R. to school hours early and the teacher drove her home because she was not fit to drive. Medical reports indicated Jill reporting to her physician a whole week went by without her being able to recall what she had done during that week, let alone driving a car.

[4] In addition to its findings with regard to K.R.'s best interests, the court noted concerns about Jill's older child, K.C., including his hygiene and Jill's "general neglect of his development," but stated, "this court does not have jurisdiction over [K.C.'s] custody in this proceeding."

the child in the physical care of Kyle, with visitation every other weekend and one overnight per week with Jill.

The dissolution trial took place over two days in June 2013, and the district court reopened the record to take additional evidence in February 2014. The parties stipulated to the property distribution, leaving physical care of the parties' child as the primary issue before the court. Jill and Kyle both sought physical care of K.R.

As of February 2014, Jill and K.C. were living in a three-bedroom home in Emmetsburg with Mark Moen and his teenage son, which was located across the street from an elementary school. Jill and Mark had known each other since they were children and hoped to marry. Mark has an extensive criminal record which includes convictions for domestic abuse assault, and he has served time in prison. However, Mark has had no criminal offenses for the last seven years. Jill was still unemployed, but testified she hoped to attend college at Iowa Lakes in the veterinarian technician program. Jill had successfully completed the pain management clinic and stated her current pain medication prescriptions were down from her prescriptions in June 2013.

K.C. had poor attendance and academic records for the 2012-2013 school year, and was repeating the eighth grade. Jill attributed K.C.'s school performance to his ADHD and medication, but other evidence indicated Jill's prescription drug use also impacted K.C.'s school performance because she was unable to function properly to get K.C. to school or make sure he did his schoolwork. K.C. and K.R. were seven years apart and got along well with each other.

Meanwhile, Kyle was living with his mother and her boyfriend in Algona while Kyle remodeled the marital home which the parties agreed he would have upon their dissolution. Due to Kyle's work schedule, his mother (K.R.'s paternal grandmother) helped care for K.R., brought him to school, and picked him up from school when Kyle was not able to. K.R., a first-grader in the Algona school district, was doing well in school and was involved in sports, church, and extracurricular activities. K.R. had a good relationship with both Kyle and Jill.

In October 2012, Kyle was arrested for operating while intoxicated (OWI), for which he received a deferred judgment and twelve months of probation. Kyle's evaluation at Prairie Ridge Addiction Treatment Services presented the diagnostic impression of alcohol abuse. Kyle participated in the Prairie Ridge treatment program and was successfully discharged in April 2013. In December 2013, Kyle was again arrested for operating while intoxicated and that charge was pending at the time of trial.

The district court issued a dissolution decree in March 2014, ordering the parties to share joint legal custody of K.R., with Kyle having physical care. The court observed "[e]ither parent would be a suitable custodian for the child" and found K.R.'s best interests would require maximum continuing contact with both parents. The court noted its concern that Jill's ailments and prescription drug use had impaired her ability to function appropriately and provide safe and adequate care for her children at all times. The court also noted the twenty-five mile distance between the parties' residences in Algona and Emmetsburg, and observed a change in school districts and family dynamics could be disruptive for K.R. The court acknowledged Kyle's "apparent" "problem with alcohol," but

found Kyle to be "stable, mentally and physically healthy, hard-working, and responsible." The court determined Kyle was capable of meeting the child's needs and provided "the more stable and least disruptive environment for K.R."

The court ordered Jill to have visitation every other weekend, alternating holidays, and four weeks in the summer. The court ordered Jill to pay child support of thirty dollars per month. Jill appeals.[5]

## II. Standard of Review

We conduct a de novo review of dissolution cases. Iowa R. App. 6.907. This entails an examination of the whole trial record to decide anew the issues raised on appeal, but with the consideration that the district court had the advantage of seeing and listening to the parties and witnesses. *See In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986). It follows that we give credit the factual findings of the district court, especially as to the demeanor and believability of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Fennelly*, 737 N.W .2d 97, 100 (Iowa 2007). Because we base our decision on the unique facts of each case, precedent is of little value. *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009).

## III. Physical Care

Jill contends she should be awarded physical care of the parties' child. To support her contention, Jill claims the district court incorrectly concluded there

---

[5] At the risk of sounding like a broken record, we once again note an all too frequently observed violation of the rules of appellate procedure: failure to place a witness's name at the top of each appendix page where that witness's testimony appears. *See* Iowa R. App. P. 6.905(7)(c). Furthermore, the omission of transcript pages was not indicated by a set of three asterisks at the location on the appendix page where the matter had been omitted. *See* Iowa R. App. P. 6.905(7)(e).

was not a history of domestic abuse between the parties; the court should not have ignored the child's preference to live with her; the child should not be separated from his half-sibling; the court gave too much weight to the temporary custodial arrangement because she was the child's primary caregiver; and the court gave too little weight to Kyle's repeated law violations since entry of the temporary ruling. In sum, she asserts the record does not support the district court's findings and conclusions for awarding Kyle physical care.

We consider numerous factors in determining which parent should have physical care of a child. *See* Iowa Code § 598.41(3) (2011); *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974). We look to which parent can administer most effectively to the children's long-term interests. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). We also consider the emotional and environmental stability each parent offers. *Id.* at 762. There is no inference favoring one parent over the other. *In re Marriage of Decker*, 666 N.W.2d 175, 177 (Iowa Ct. App. 2003). The "critical issue is determining which parent will do a better job raising the children; gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain primary care in an original dissolution proceeding." *Id.*

The district court carefully considered the factors set forth in section 598.41 and ultimately determined placing physical care of the child with Kyle was in the best interest of the child. In reaching its conclusion, the court found there was not a history of domestic abuse, a finding Jill challenges on appeal. On the issue, the court stated:

A criminal complaint was filed against Kyle alleging domestic abuse assault causing bodily injury and a no contact order was issued. The State of Iowa filed a Trial Information against Kyle for this offense, which was eventually amended on May 1, 2013, from Domestic Abuse Assault Causing Bodily Injury, to the charge of Obstruction of Emergency Communication, in violation of Iowa Code section 727.5, a simple misdemeanor. Weighing the evidence presented regarding the March 10, 2012, incident, its nature, severity, and the lack of repetition, the court concludes that there is not a history of domestic abuse.

In interpreting what is sufficient to constitute a "history of domestic abuse," as that term is used in Iowa Code section 598.41, the Iowa Supreme Court has held a "history" is not necessarily established by a single documented incident. *In re Marriage of Forbes*, 570 N.W.2d 757, 760 (Iowa 1997). Nor does more than one minor incident automatically establish a "history of domestic abuse." *Id.* Although evidence of domestic abuse creates a rebuttable presumption against an award of custody, *see In re Marriage of Ford*, 563 N.W.2d 629, 632 (Iowa 1997), it is for the court to weigh the evidence of domestic abuse, its nature, severity, repetition, and to whom directed, not just to be a counter of numbers. *Forbes*, 570 N.W.2d at 760. We are mindful the district court had the benefit of hearing and observing the parties first-hand and therefore give considerable weight to its judgment. *Id.* at 759. Upon our de novo consideration of the evidence presented on this issue, we conclude there was not a history of domestic abuse between the parties.

The court also determined in light of K.R.'s age (seven-years-old), "no evidence was taken by the court as to the child's wishes." Although the court shall consider "whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the

child's age and maturity," we believe the court's decision not to do so here was appropriate. *See In re Marriage of Behn*, 416 N.W.2d 100, 102 (Iowa Ct. App. 1987) (noting that in determining the weight to be given to a child's wishes, we consider the following factors: (1) the child's age and educational level; (2) the strength of the child's preference; (3) the child's relationship with family members; and (4) the reasons the child gives for his decision); *cf. McKee v. Dicus*, 785 N.W.2d 733, 738 (Iowa Ct. App. 2010) (giving "some weight" to the preferences of a fifteen-year-old who "expressed a strong preference" to live with his father).

The district court acknowledged its physical care determination would separate K.R. from his half-sibling. "There is a presumption that siblings should not be separated." *In re Marriage of Will*, 489 N.W.2d 394, 398 (Iowa 1992). Separation of half-siblings, however, is justified where it better promotes a child's long-range best interests. *See In re Marriage of Harris*, 530 N.W.2d 473, 474 (Iowa Ct. App. 1995). We believe the long-range best interests of K.R. outweigh the strong interest in not separating him from K.C.

The record does not support Jill's assertion that the district court placed weight on the temporary custodial arrangement. To the contrary, the court observed Jill was the primary caretaker before the parties separated, and "both parents have shared the responsibility of raising the child both before and since the separation." Although the temporary order placed the child in the care of Kyle, it created no presumption that he should be the preferred parent in the final custody decision. *See In re Marriage of Swenka*, 576 N.W.2d 615, 617 (Iowa Ct. App. 1988).

Kyle's OWI charges and drinking problem are concerning. However, neither of these parents is perfect. And in contrast to Jill's use of prescription drugs while caring for the child, there is no evidence of Kyle drinking while he cared for the child. This is not to say Kyle's issues are water under the bridge. Kyle has acknowledged he has a problem with alcohol, that it will "be a challenge to quit drinking," and that he has sought treatment at a sixteen-week Matrix program. In addition, Kyle will likely face legal repercussions stemming from his December 2013 arrest.

At the end of the day, the overriding concern is the best interests of the child. Iowa R. App. P. 6.904(3)(o). Our objective is to place the child in an environment likely to promote a healthy physical, mental, and social maturity. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). After carefully reviewing the evidence, we agree with the district court's ultimate resolution of this case. We conclude it is in the child's best interest to be placed in the physical care of Kyle.

## IV. *Visitation*

In the event the child remains in Kyle's physical care, Jill requests adjustments in visitation. "Liberal visitation rights are in the best interests of the [child]." *In re Marriage of Toedter*, 473 N.W.2d 233, 234 (Iowa Ct. App. 1991). "Unless visitation with the noncustodial parent will in some way injure the child, they are not to be prohibited." *Id.*

Jill seeks mid-week overnight visitation during the school year, similar to what she was awarded by the temporary physical care order. The district court determined "[b]ecause of the geographical distance between the parties visitation

on alternating Mondays from 4:00 p.m. on Monday until 7:00 a.m. on Tuesday morning when school is in session . . . is not practical." Under the circumstances of this case, we agree mid-week overnight visitation during the school year is not in the child's best interests. However, we believe Jill should have mid-week visitation with the child. We modify the decree to award Jill visitation with the child one evening per week, from when K.R. is dismissed from school until 7:00 p.m. Jill and Kyle shall prearrange which night each week would be the best; if the parties cannot agree, visitation shall take place on Tuesday. The transportation expenses relating to transporting the child for visitation shall be shared equally between the parties.

Jill also requests more visitation during the summer. Jill was awarded four one-week visits each summer; she requests physical care of K.R. in the summer "subject to visitation by Kyle." Considering the circumstances here, including the child's activities and the distance between the parties' residences, we conclude four weeks of summer visitation is reasonable. We emphasize these visitation periods granted by court decree are the *minimum* periods. "The parents are expected to actively encourage positive relations between the other parent and the child[.]" *See id.* at 235.

## VI. Attorney Fees

Jill seeks attorney fees for this appeal. An award of appellate attorney fees is not a matter of right but rests within this court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). We consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision

on appeal.  *Id.*  In consideration of these factors, we decline to award appellate attorney fees to Jill.

We affirm the decision of the district court, as modified to include mid-week visitation for Jill one evening per week.  Costs on appeal are assessed one-half to each party.

**AFFIRMED AS MODIFIED.**