**IN THE COURT OF APPEALS OF IOWA**
No. 24-1052
Filed April 9, 2025

**IN RE THE MARRIAGE OF TRENTON JAMES GREENFIELD
AND HALEY MARIE GREENFIELD**

**Upon the Petition of
TRENTON JAMES GREENFIELD,**
        Petitioner-Appellee,

**And Concerning
HALEY MARIE GREENFIELD,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Patrick D. Smith,

Judge.


        A mother appeals a dissolution decree placing the parties' children in their

joint physical care.  **AFFIRMED.**


        Ryan J. Baumgartner and Elizabeth S. Longcor of Cashatt Warren Family

Law, P.C., Des Moines, for appellant.

        Jason Springer of Springer Law Firm, PLLC, Madrid, for appellee.


        Considered without oral argument by Ahlers, P.J., and Badding and

Buller, JJ.

**BADDING, Judge.**

Trenton and Haley Greenfield are the parents of twin children—a boy and girl born in 2021. In the decree dissolving their marriage, the district court granted Trenton's request for joint physical care of the children. Haley appeals, claiming the children should have instead been placed in her physical care. We affirm upon our de novo review of the record.

**I.      Background Facts and Proceedings**

Trenton and Haley met while attending college in 2011. They were married in 2015 and welcomed their twins six years later. Haley stayed at home with the children until they were eighteen months old, while Trenton worked as a mechanic at a local autobody shop. Although he worked during the day, Trenton helped with changing the twins' diapers, feeding them, and getting up with them during the night. He also did the family's laundry, shared cleaning duties with Haley, and helped with other household tasks. Haley, however, said that she often felt like a single parent because Trenton was not around very much. Trenton acknowledged that he sometimes hung out with friends in their neighborhood when he wasn't working.

By August 2022, the parties had decided to divorce, but they kept living together in the marital home with the children. Trenton moved to the basement, and Haley stayed upstairs. Around the same time, Haley started working at a daycare center, although it was not the same one the children attended. Wanting to work on the marriage, Trenton started participating in a relationship coaching service through his church. He also began taking medication to help treat his depression. But at some point, Haley began leaving the house at night—

sometimes not coming home at all—without telling Trenton where she was. Trenton suspected that she was seeing someone else.

In February 2023, Trenton petitioned for divorce. After a mediation in April, the parties agreed in a temporary stipulation that if one of them moved out of the marital home, they would share physical care of the children on an alternating two-day, two-day, three-day schedule. The next month, Trenton and Haley had an argument about their joint bank account. Trenton texted Haley and asked her to stay somewhere else that night, but she came home around 10:00 or 11:00 p.m. Trenton packed a bag, woke the children up, and put them in his truck to leave. Haley went into the garage and tried to stop Trenton from leaving with the children. She got their son out of the truck, but while she was trying to unbuckle their daughter, Trenton put the truck into reverse. Haley—who was holding their son—was hit by the door. Trenton stopped the truck, and the police were called. Neither Haley nor the children were injured.

Trenton was arrested and charged with domestic abuse assault with a dangerous weapon. A criminal no-contact order was entered, prohibiting Trenton from having contact with Haley and the children. Haley also secured a civil protective order against Trenton. The Iowa Department of Health and Human Services investigated the incident and issued a founded report for denial of critical care against Trenton. The department also investigated a report that Haley was smoking marijuana while caring for the children. After Haley's drug screen was presumptively positive for THC, she admitted taking an edible on a weekend when the children were not in her care. The report was not confirmed.

Trenton pled guilty to the domestic abuse assault charge and received a deferred judgment. He was placed on probation for two years and ordered to complete the Iowa Domestic Abuse Program, along with a parenting class. At the beginning of June, Haley agreed to modify the no-contact orders so that Trenton could visit the children every other Saturday and Sunday from 9:00 a.m. until 6:00 p.m. and Wednesday evenings, to be supervised by his mother or sister. That arrangement continued until October, when the parties modified the no-contact orders again so that they could return to the temporary joint physical care arrangement. They also agreed to communicate through a parenting app.

At the dissolution trial in November 2023, Trenton and Haley agreed on everything but physical care of their children. Trenton wanted to continue with joint physical care, while Haley wanted the children placed in her physical care. Haley testified that although Trenton was a good dad, she had always been the children's primary caregiver. She was also worried about whether Trenton could handle the twins by himself and whether his depression was under control.

Trenton testified that immediately after the assault in May, he started a life skills course through his church focused on domestic violence. He had completed phase one of that course by trial and was ready to start phase two once it was offered. Trenton had also started the classes for the Iowa Domestic Abuse Program. He said the life skills course in particular had taught him how to handle stress and deal with his emotions. Trenton testified that he was "very regretful for what happened that night" and that he was taking "personal steps in [his] life to make sure it doesn't happen again."

Although the district court felt this was a close case because of the domestic abuse incident, it concluded "that maintaining the joint physical care to which the parties agreed in the Temporary Matters Stipulation is in the children's best interests." The court found that incident did "not tip the balance away from joint physical care" because it was an isolated event that Trenton accepted responsibility for and regretted. And while the court found Haley "provided the lion's share of day-to-day care for the children," it concluded the "approximation rule" should be given little weight because of the children's young age. Noting both parties were "capable of immature and selfish behavior," the court found neither could "credibly claim they are the better parent." The court accordingly granted the parties joint legal custody of the children and placed them in their joint physical care.

Haley appeals, claiming the district court should not have: (1) overlooked her role as the children's primary caregiver; (2) disregarded the parties' inability to communicate and agree on daily matters; (3) ignored the domestic abuse; and (4) based its physical-care decision on "perceived fairness to the parties."

## II. Standard of Review

Our review of dissolution proceedings is de novo. Iowa R. App. P. 6.907; *see also In re Marriage of Pazhoor*, 971 N.W.2d 530, 537 (Iowa 2022). While we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, we are not bound by them. Iowa R. App. 6.904(3)(g); *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). When considering child custody, our principal consideration is the best interests of the children. Iowa

R. App. P. 6.904(3)(n); *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

## III.    Analysis

Where, as here, "joint legal custody is awarded to both parents, the court may award joint physical care to both joint custodial parents upon the request of either parent."  Iowa Code § 598.41(5)(a) (2023).  Physical care determinations are based on the best interests of *children*, not "upon perceived fairness to the *spouses.*"  *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).  "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity."  *Id.*

In making a physical-care determination, we consider the factors set out in Iowa Code section 598.41(3) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974).[1]  We also consider the following nonexclusive factors when examining whether joint physical care is in a child's best interest:

> (1) "approximation"—what has been the historical care giving arrangement for the child[ren] between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

---

[1] "The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3)."  *In re Marriage of Courtade*, 560 N.W.2d 36, 37 (Iowa Ct. App. 1996).  "Although Iowa Code section 598.41(3) does not directly apply to *physical care* decisions, . . . the factors listed here as well as other facts and circumstances are relevant in determining" physical care.  *Hansen,* 733 N.W.2d at 696.

*In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (quoting *Hansen*, 733 N.W.2d at 697–99).

Starting with approximation, Haley argues that because she was "the primary caregiver for the children since birth, this factor weighs in favor" of placing the children in her physical care. But the "fact a parent was the primary caretaker prior to separation does not assure he or she will be the custodial parent." *In re Marriage of Decker*, 666 N.W.2d 175, 178 (Iowa Ct. App. 2003). Trenton agreed that for much of the marriage, Haley was the primary caregiver. But he testified that changed shortly after the couple decided to divorce, when Haley "began being gone most nights," leaving him to take "care of the kids solely." Even before that point, the evidence shows that Trenton was an engaged and involved father. *See Watson v. Ollendieck*, No. 22-1350, 2023 WL 3335602, at *4 (Iowa Ct. App. May 10, 2023) (stating the approximation factor "loses significance 'where the historically less-involved parent has proven to be a capable caregiver'" (citation omitted)).

Haley claims otherwise, arguing Trenton "was unable to give any detail regarding the care he provided for his children." That argument is not supported by the record. Trenton testified that he helped with the children's daily care, and he participated in their medical decisions. After the parties separated, Trenton secured a more flexible job and began taking their son to some of his play therapy appointments to help with his suspected autism diagnosis. He also testified that when the children are in his care, they play at the park, go to dinner, and attend local events, with Trenton trying to "spend as much time as [he] can with them." Trenton's witnesses confirmed that he was active with the children. One of his

friends testified that "[i]t's hard to have conversation" with Trenton when the twins are there because "he's pretty much focused on them." And Trenton's sister testified the children "just naturally . . . gravitate to him" and "light up" when he walks into a room. Given this evidence, we do not find the court improperly discounted Haley's historical role as the children's primary caregiver.

We also disagree with Haley that the district court gave too much weight to the temporary caretaking arrangement in discussing the approximation factor. It is true, as Haley argues, that "[t]emporary orders awarding physical custody create no presumption that parent is the preferred parent in a final custody decision." *In re Marriage of Swenka*, 576 N.W.2d 615, 617 (Iowa 1998). However, the court did not place the children in the parties' joint physical care *because of* their temporary stipulation, as Haley suggests. Instead, after considering the relevant factors, the court found maintaining that arrangement was in the children's best interests. *See In re Marriage of Short*, 373 N.W.2d 158, 160 (Iowa Ct. App. 1985) (finding the district court's "statement that there was 'no compelling reason' to change the [temporary care order] merely reflected its conclusion that [the father] was the preferred custodial parent"). We agree.

Turning to those other relevant factors, Haley argues that joint physical care is not in the children's best interests because the "record shows the struggle the parties face to communicate and agree on daily matters." But we don't see those struggles in the record. To be significant enough to justify a denial of joint physical care, "a lack of ability to communicate must be something more than the usual acrimony that accompanies a divorce." *In re Marriage of Ferguson*, No. 21-0952, 2022 WL 1486508, at *3 (Iowa Ct. App. May 11, 2022) (quoting *In re Marriage of*

*Ertmann*, 376 N.W.2d 918, 920 (Iowa Ct. App. 1985)). While the parties' communication was limited because of the no-contact orders, they later modified those orders to allow for greater communication about the children. Since then, Trenton testified that he and Haley have been able to work together to figure out the custody exchanges "and see what works for us." They also worked together to figure out the children's immunizations and therapies for their son. This is not a case in which the level of discord and mistrust is so high as to make joint physical care unworkable, even considering the domestic abuse assault in May 2023. *See Watson*, 2023 WL 3335602, at *4.

We recognize, as did the district court, that "[e]vidence of untreated domestic battering should be given considerable weight in determining custody" and that it "gives rise to a presumption against joint physical care." *Hansen*, 733 N.W.2d at 698. But it's for the court "to weigh the evidence of domestic abuse, its nature, severity, repetition, and to whom directed." *In re Marriage of Forbes*, 570 N.W.2d 757, 760 (Iowa 1997). The court weighed that evidence here, finding

> the incident that resulted in Trenton being criminally charged and subject to no-contact orders was a one-time event that he recognizes was wrong and regrets. Trenton admittedly acted in anger during a time when the divorce was pending, the couple was still residing in the same house, and they were arguing about money. Trenton has taken steps through the life-skills class to better manage his emotions. The court finds Trenton was motivated to change and improve because of the criminal charges, and his desire to maintain his relationship with his children. No evidence was presented that Trenton had in the past, or has since, engaged in conduct that would be considered domestic abuse, nor does the court find Trenton presents a risk to his children's well-being or safety.

We agree with the court's assessment of the domestic-abuse evidence, mindful that "the district court had the parties before it and was able to observe and

evaluate the parties as custodians." *In re Marriage of Roberts*, 545 N.W.2d 340, 343 (Iowa Ct. App. 1996).

Finally, we see no indication that the district court placed the children in the parties' joint physical care based on "perceived fairness between the parties," as Haley contends. Despite the tumultuous end to their marriage, each party described the other as a good parent. In fact, Trenton testified Haley was a "wonderful mother," and he didn't want to take time away from her. In his view, however, the joint physical care arrangement had "been going wonderfully." The record supports that assessment. Placing the twins in the joint physical care of these suitable and devoted parents will assure the children "the opportunity for the maximum continuing physical and emotional contact with both parents" and "will encourage the parents to share the rights and responsibilities" of raising the children, which is in their best interests. *In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996); *accord* Iowa Code § 598.41(1)(a).

For these reasons, we affirm the district court's decision to place the parties' children in their joint physical care.

**AFFIRMED.**