**IN THE COURT OF APPEALS OF IOWA**

No. 14-1292
Filed May 6, 2015

IN RE THE MARRIAGE OF MISTY KLEMMENSEN
AND MICHAEL KLEMMENSEN

Upon the Petition of
**MISTY KLEMMENSEN,**
    Petitioner-Appellant,

And Concerning
**MICHAEL KLEMMENSEN,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Woodbury County, Mary Jane Sokolovske, Judge.

A mother appeals the physical care and child support awards in the dissolution of marriage decree. **AFFIRMED AS MODIFIED AND REMANDED.**

Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West Des Moines, for appellant.

Jeffrey T. Myers of Hutchison, Myers, Eckert & Vohs, Sioux City, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

The district court dissolved the marriage of Misty and Michael Klemmensen and awarded physical care of their six-year-old daughter, K.L.K, to Michael. Misty appeals that decision, asserting she should be the primary caregiver because of Michael's work schedules. In the alternative, Misty asks for a right of first refusal for providing K.L.K's care when Michael has overnight work obligations. She also appeals the court's denial of a $200 credit for her support of another child and the court's granting of Michael's motion to reconsider.

After reviewing the record, we affirm the physical care award to Michael. But we order three modifications of the decree. First, because it is in K.L.K.'s best interest to spend the maximum amount of time with each parent, we modify the decree to provide Misty with the right of first refusal when Michael's work requires him to be away from K.L.K. for twelve consecutive hours or more. Second, we find Misty is entitled to the child support credit and remand for a new child support calculation. Third, because Michael's motion to reconsider was untimely, we vacate the portions of the district court's August 8, 2014 order granting Michael's requests pertaining to the tax dependency deduction and the parties' summer visitation rights.

## I.     Background facts and proceedings

Misty and Michael were married on May 7, 2007. They have one child together, K.L.K., who was born in 2008. The parents separated in April 2013. Misty filed for dissolution of marriage on July 29, 2013.

Michael is thirty-one years old and in good health. He stayed in the marital home in Hinton, which was also his childhood home. Michael works as a fireman for the State of Iowa, a volunteer for the Hinton Fire Department, and is member of the Iowa Air National Guard. He also works part-time at Peak Performance, a fitness center operated by a friend. In addition, Michael has assisted his father with work projects, such as striping parking lots. Michael's work schedule as a fireman requires him to be on duty for twenty-four hours then off duty for forty-eight hours. His guard service requires him to be gone one weekend of every month.

Misty is thirty-seven years old and in good health. She currently works as a receptionist at the Holton Clinic of Chiropractic in Hinton. She works 8:00 a.m. to 6:00 p.m. on Mondays, Tuesday and Thursdays, and from 8:00 a.m. to 2:00 p.m. on Wednesdays and Fridays. After the separation, Misty temporarily moved in with her mother. In October 2013, she began cohabitating with Dr. Nick Holton at his house in Le Mars, which was approximately a sixteen-minute drive from Hinton.

At the time of the dissolution trial, K.L.K. was five years old and attending kindergarten in Hinton. She also attended before and after school care as required by her parents' schedules. Both parents believed that she had adjusted well to spending time in two different homes.

Before trial, the parties agreed on most issues, including joint legal custody. But the district court was left to decide physical care, visitation, and

child support. Both parents sought physical care.[1] The court held trial on February 13 and February 25, 2014. Misty called four witnesses; Michael presented thirteen witnesses. Both parties testified themselves, and each expressed positive views of the other's parenting abilities.

On July 1, 2014, the court filed the decree, granting physical care to Michael. Misty filed an Iowa Rule of Civil Procedure 1.904(2) motion on July 9, 2014, asking the court to reconsider the decision on physical care as well as its decision on a child credit.[2] Michael filed his resistance on July 16, 2014. Michael filed two motions to reconsider on July 17, 2014. The district court ruled on all of these motions on August 8, 2014. The court denied Misty's requests to change physical care and for credit for support she paid for another child, but did agree to recalculate child support in recognition that Misty would have extraordinary visitation of at least 127, but not more than 147 overnights per year. *See* Iowa Court Rule 9.9. The court granted Michael's request that Misty's five weeks of summer visitation not be consecutive and his request to alternate the dependency tax deduction. Misty now appeals.

## II. Standard of review

We review custody and child support decisions de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). Although we decide the issues

---

[1] In her petition, Misty asked for joint legal custody and joint physical care. In his answer, Michael agreed to that request. But by the time of trial, Misty was seeking physical care, as was Michael, though he testified that in the alternative he would favor alternating weekly physical care of their daughter.

[2] Misty has a sixteen-year-old son from a previous relationship. The child and his father live in Tennessee. Misty has regular visitation as the child spends his summers with her. Misty asserted she paid child support of $200 per month.

raised on appeal anew, we give weight to the factual findings, especially in regard to witness credibility. *In re Marriage of Witten*, 672 N.W.2d 768, 773 (Iowa 2003). Decisions on the physical care of a child are made by considering the child's best interests. *In re Marriage of Decker*, 666 N.W.2d 175, 177 (Iowa Ct. App. 2003).

## III. Physical care

Misty seeks physical care of her daughter K.L.K. In granting physical care to Michael the district court said, "In determining which parent would overall promote the child's best interest, the court finds that Michael is better up to this task. The court finds that the physical care of K.L.K. should be placed with Michael subject to Misty's rights of visitation."

Both Misty and Michael have proven parenting skills and strong bonds with their daughter. They both participated in K.L.K.'s care before their separation and both were active in her everyday activities. Likewise, both parents speak positively of the other's ability to care for K.L.K. Misty's overriding concern about placing physical care with Michael emphasizes his demanding work schedules. Addressing that issue, the court said:

> Michael although he does work numerous hours, he has placed K.L.K. as his number one priority. He testified that he is solely focused on K.L.K. and is not dating anyone. He remained in the family home and believes that it is best for K.L.K. to likewise have the family home as K.L.K's principle residence. He does acknowledge that Misty is a good mother but that he will provide a stable, consistent and safe home for K.L.K. He testified that he will support the relationship between K.L.K. and Misty.

In reviewing this decision, we consider an array of factors.[3]  *See* Iowa Code § 598.41(3); *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974).  Our goal is to determine which parent "will do a better job raising the child." *In re Marriage of Decker*, 666 N.W.2d 175, 177 (Iowa Ct. App. 2003). This is a close question because both Misty and Michael are more than suitable custodians.  The district court justified its physical care award to Michael as follows:

> The court has considered both parents for placement of K.L.K. Each parent has their own assets that show that each is a good parent to K.L.K.  The court has also considered joint physical care but this does not appear to be in the best interests of K.L.K.  There were issues of a lack of communication between Misty and Michael.  There is also the issue of Misty's current living situation and the fact that she now residing in Le Mars and having K.L.K. needing to travel at least fifty percent of the time to attend school.

After reviewing the evidence and the testimony of the witnesses presented at trial, we find no reason to reverse the district court's decision.  While we are

---

[3] The pertinent factors in this case include:

    a. Whether each parent would be a suitable custodian for the child.

    b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.

    c. Whether the parents can communicate with each other regarding the child's needs.

    d. Whether both parents have actively cared for the child before and since the separation.

    e. Whether each parent can support the other parent's relationship with the child.

    f. Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity.

    g. Whether one or both the parents agree or are opposed to joint custody.

    h. The geographic proximity of the parents.

Iowa Code 598.41(3) (2013).

less concerned than the district court about any detriment to K.L.K. from Misty's current living situation, we agree Michael's home offers K.L.K. greater stability.

Michael's supervisor, Dan Williams, testified about a firefighter's work schedule and the way shifts are assigned during the twenty-four hours on, forty-eight hours off schedule. Williams explained this schedule allowed Michael to be home twenty days a month. He also testified that on the days he is working, "there's always some flexibility as far as if a situation comes up and he needs to take off." Michael's other employment and National Guard duty, while increasing his work load, do not impede his overall ability to handle physical care of K.L.K.

Michael testified he was committed to spending as much time as possible with K.L.K. and would also support his daughter's relationship with her mother. We find nothing in the record to dispute his testimony, and we give deference to the district court as it "had an opportunity to view, firsthand, the demeanor of the parties and evaluate them as custodians." *In re Marriage of Walton*, 577 N.W.2d 869, 871 (Iowa Ct. App. 1998).

## IV. Right of first refusal

In the alternative to physical care, Misty asked the district court to add a provision to the decree requiring Michael to offer her the opportunity to care for K.L.K. when he was unavailable to provide supervision due to an extended work obligation before he utilized a third-party child care provider. This arrangement has been termed a "right of first refusal" in our case law. *See In re Marriage of Lauritsen*, No. 13-1889, 2014 WL 3511899, at *3 (Iowa Ct. App. July 16, 2014). The court did not grant Misty's request.

Our law requires a custody award that will "assure the child maximum continuing physical and emotional contact with both parents" after divorce, including "liberal visitation rights where appropriate." Iowa Code § 598.41(1)(a). Again, our primary consideration is the best interests of the child and in most cases liberal visitation serves that interest. *In re Marriage of Stepp*, 485 N.W.2d 846, 849 (Iowa Ct. App. 1992).

Michael acknowledged he planned to have a member of his extended family or another babysitter watch K.L.K. every third day when he was required to work an overnight shift. He acknowledged this parenting plan did not maximize K.L.K.'s time with both parents, saying: "I feel it would maximize her time with me." The following testimony from Michael was telling:

> Q: Michael, why did you provide that Misty can have [K.L.K.] one night a week? A: Because it would—to me it would make sense to have it fall on one of the nights where I would either have to have a babysitter or the family—or part of my extended family to watch [K.L.K.]. I thought why not give Misty that night.
> Q: And we heard testimony that she's available any night of the week, didn't we? A: Correct.

He went on:

> Q: Are you willing to have [K.L.K.] spend other nights during the week when you are at work with her mom if she's available? A: Not at this time.

It is not clear why it would make sense to have Misty care for K.L.K. one night per week when it works with Michael's schedule, but not have the option to care for her for additional nights if Michael will be required to arrange for a substitute care provider. We conclude Misty should be given "the right of first refusal" when Michael is required to work for twelve or more consecutive hours or

during his National Guard weekends if Misty does not already have visitation scheduled with K.L.K. for that weekend. *See Lauritsen*, No. 13-1889, 2014 WL 3511899, at *3 (upholding right-of-first-refusal provision). From our review of the record, we find Michael and Misty have been able to put aside their differences when it comes to communicating about K.L.K. Accordingly, we do not believe providing Misty a right of first refusal will result in heightened conflict between the parents. Misty's opportunity to refuse this additional time to care for K.L.K. during Michael's work obligations should be accomplished at the same time she receives Michael's six-month work schedule to set the six midweek days of visitation as provided in the original decree. We recognize providing Misty this right of first refusal may increase the percentage of the noncustodial parent's extraordinary visitation credit under the child support guidelines. *See* Iowa Ct. R. 9.9 (providing fifteen percent credit for 128 to 147 days and twenty percent credit for 147 to 166 days). The district court should address this extraordinary visitation credit during the remand for recalculating child support ordered in the next issue.

**V.      Child support credit**

Misty appeals the district court's calculation of her child support claiming the court failed to include the $200 per month she pays in support of a child from a previous relationship. The district court found insufficient evidence to support Misty's payment in the record, though the amount was included on Misty's child support worksheet.

In our de novo review, we note that Misty claimed the $200 support payment in her affidavit of financial status filed with the court on February 12, 2014. Michael acknowledges the payment in his motion resisting Misty's rule 1.904(2) motion. We find this record sufficient to support her claim. We remand for a recalculation of child support and for a hearing on what her support should be going forward. The hearing on remand should address this issue along with any other changes in child support calculations that arise from our modification of the original decree.

## VI.    Michael's belated motion to enlarge or amend

Under the rules of civil procedure, a party has fifteen days from the district court's filing of the decision to seek to enlarge or modify. *See* Iowa R. Civ. P. 1.904(2); Iowa R. Civ. P. 1.1007. Here, the district court filed the dissolution decree on July 1, 2014. Fifteen days ran on Wednesday, July 16, 2014. Michael filed both of his motions to "reconsider" on July 17, 2014, one day too late.[4]

Michael argues if his motions were untimely, the district court still had discretion to address the issues of summer visitation and the tax dependency.[5] The decree allowed Misty five consecutive weeks of summer visitation. The decree did not mention K.L.K.'s contact with Michael during that period. In response to Michael's belated filing, the court amended the decree to break up the five weeks of visitation, providing no more than two weeks could be

---

[4] Michael claims his motions were timely because a holiday, the Fourth of July, occurred during the fifteen days. Under Iowa Code section 4.1(34), legal holidays will only extend the deadline if they fall on the last day for filing the motion.

[5] Michael does not make an alternative argument that the appellate court should modify the original decree regarding these issues.

consecutive. The court also amended the decree to direct the parties to claim K.L.K. as a dependent on their income tax returns in alternating years.

Our courts have "always strictly enforced the time in which a party has to file posttrial motions." *Estes v. Progressive Classic Ins. Co.*, 809 N.W.2d 111, 117 (Iowa 2012). After the deadline, a party cannot file posttrial motions. *Id.* Therefore, we must vacate the district court's amendment of the decree.

Costs on appeal are divided equally to Michael and Misty.

**AFFIRMED AS MODIFIED AND REMANDED.**