# IN THE COURT OF APPEALS OF IOWA

No. 15-0631
Filed February 24, 2016

IN RE THE MARRIAGE OF BRITTNI HEITMAN
AND ANDREW HEITMAN

Upon the Petition of
**BRITTNI HEITMAN,**
    Petitioner-Appellant,

**And Concerning**
**ANDREW HEITMAN,**
    Respondent-Appellee.

_____

Appeal from the Iowa District Court for Iowa County, Ian K. Thornhill, Judge.

A mother appeals from the district court's decree dissolving her marriage.

**AFFIRMED AS MODIFIED AND REMANDED.**

Mark D. Fisher and Frank J. Nidey of Nidey, Erdahl, Tindal & Fisher, P.L.C., Cedar Rapids, for appellant.

John C. Wagner of John C. Wagner Law Offices, P.C., Amana, for appellee.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Brittni Heitman appeals from the district court's decree dissolving her marriage to Andrew Heitman. Brittni contends the district court should have awarded her physical care of the parties' minor daughter, T.H., rather than awarding the parties shared physical care. Brittni also claims the court should have incorporated her proposed first-opportunity-to-care provision. Both parties request an award of appellate attorney fees.

Because Brittni has been the primary caregiver of T.H. and has shown much more attention to T.H.'s hygiene, safety, and routine, we conclude it is in T.H.'s best interests to modify the district court's award of joint physical care and place the child in Brittni's physical care with liberal parenting time for Andrew. We also modify the order to include a first-opportunity-to-care provision. We remand to the district court for the determination of an appropriate visitation schedule and child support obligation. Additionally, we award Brittni $1500 in appellate attorney fees.

**I. Background Facts and Proceedings.**

Brittni and Andrew were married in June 2009. They are the parents of T.H., who was born in July 2011. The parties built a home on land about one-half mile down the road from Andrew's parents' home. Brittni is employed as an elementary school teacher in Williamsburg. She has a bachelor's degree in elementary and early childhood education with an endorsement in both special education and reading. She also has a master's degree as a professional educator. Andrew is employed as a salesperson and sells farm machinery and

equipment out of Grinnell to customers located throughout Iowa County. He has a bachelor's degree in business administration. Andrew also performs some work on his parents' farm—which is in excess of 2000 acres. Additionally, he owns approximately eighty acres of his own farmland, and he provides the husbandry for a small herd of sheep.

Brittni was on summer break for the first six weeks following T.H.'s birth, and she did not return to work for another two weeks after school resumed in order to care for T.H. She has the typical educator's schedule, with school holidays and breaks off, and generally works outside the home 8:00 a.m. until 4:00 p.m., Monday through Thursday, and 8:00 a.m. until 3:30 p.m. on Friday during the school year. Andrew works longer hours, usually leaving home around 7:00 a.m. and returning around 6:00 p.m. during the week. He also works on some weekends, both for his primary employer and on the farm. Andrew testified his employment was flexible, he was able to attend T.H.'s medical appointments, and his farming responsibilities were not time- or labor-intensive. Andrew and both of his parents each testified that after T.H. was born, Andrew's work on their farm had been very limited.

Andrew was involved during the pregnancy, attending prenatal appointments and classes, participating in T.H.'s birth, and prepping their home and nursery for her arrival. Brittni testified she performed approximately ninety percent of T.H.'s daily care prior to the temporary custody order being entered—changing T.H., feeding her, bathing her, transporting her to and from daycare, and taking her on walks—while Andrew was minimally involved—only changing

her diapers on occasion and dressing her after Brittni had chosen T.H.'s outfit. Andrew testified he was providing approximately half of T.H.'s daily care when the school year was in session, though Brittni provided more during the summer break because T.H. did not regularly attend daycare during the summer.

Brittni also testified she was primarily in charge of arranging medical and dentist appointments for T.H., as well as extracurricular activities, including swim lessons, gymnastics, and dance camps. Andrew testified he emphasized T.H.'s participation in farming activities and spending time with his family. The record indicates Brittni attended a large majority of T.H.'s doctors' appointments, while Andrew testified he attended at least four or five. At a deposition prior to trial, Andrew was unable to name T.H.'s doctor or dentist.

Prior to the filing of the petition, the parties split up weekends so each could spend one-on-one time with T.H. Brittni would spend Saturdays with T.H. and Andrew would have Sundays after church, which the whole family attended together.

On February 14, 2014, Brittni filed a petition for dissolution of marriage and an application for temporary custody and support. On April 14, 2014, the district court entered a temporary order placing T.H. in the parents' joint legal custody and shared physical care. The court established a temporary visitation schedule that provided Brittni would have T.H. in her care every Monday afternoon until Friday afternoon, and Andrew would have T.H. in his care every Friday afternoon until Monday afternoon. Each party also received two nonconsecutive weeks during the summer with T.H. and various specified

birthdays and holidays.[1]  Following entry of the temporary custody order, Brittni remained in the marital residence because of her concerns regarding T.H.'s safety while in Andrew's care.  On weekends, Andrew often took T.H. to visit his parents' home or nearby friends.  He and T.H. often left early in the morning while T.H. was still in her pajamas and before she had breakfast, and they frequently returned home at 10:00 p.m. or later.

The trial took place on January 6–8, 2015.  The parties agreed Andrew would continue to live in the marital home, which was near his parents' home and where he hoped to eventually farm full time.  Brittni testified she planned to live in Williamsburg, near the school where she worked and T.H.'s daycare provider.  The parties agreed to joint legal custody of T.H.  Andrew asked the court for shared care.  He testified T.H. was thriving under the temporary shared care order.  Brittni requested physical care of T.H., and proposed a visitation schedule for Andrew that would include caring for T.H. on alternating weekends and every Wednesday evening for four hours.  Brittni also requested that the court include a first-opportunity-to-care provision, which would be effective for both parents if either was unavailable to personally care for T.H. for a period exceeding two hours during their scheduled parenting time with T.H.

At trial, Brittni testified she was concerned about T.H.'s safety while on the farm, T.H.'s hygiene, and Andrew's drinking alcohol, though she admitted Andrew had remedied some of her concerns before trial.  Brittni testified Andrew

---

[1] The court also ordered Andrew to pay temporary child support and temporary spousal support to Brittni.  Because Brittni continued to live in the marital home following entry of the temporary support orders, Andrew did not make any payments to Brittni and the orders were vacated pursuant to the parties' agreement at the time of trial.

would transport T.H. in his truck to his parents' home without a car seat every weekend, despite her requests that he buckle her into a car seat.[2] Brittni also testified Andrew had serious problems caring for T.H.'s hygiene. She stated T.H. would sleep in soiled sheets because either T.H. would wet the bed and Andrew would not clean it up right away or, during fall harvest, Andrew's nose would bleed on the sheets and he would not wash them for several days. She also claimed T.H. would soil her pants when in Andrew's care and Andrew rarely bathed her, though T.H.'s longtime daycare provider testified she did not notice a change in T.H.'s hygiene depending upon who was caring for T.H.

Brittni also testified she believed Andrew had issues with drinking alcohol. She cited three specific occasions during which she thought Andrew had drunk too much and was acting out of control,[3] some of which occurred before she filed the petition for dissolution. However, she also testified she had only observed him drinking alcohol twice in the year and a half leading up to trial despite having continued to live in the same home as him. Witnesses for both sides testified they rarely saw Andrew drinking alcohol; usually at social events like weddings, and they had never seen Andrew drunk while T.H. was in his care.

---

[2] Brittni's sister also testified at trial she once saw Andrew leaving the parties' home with T.H. not in a car seat and turning onto the road in the direction of town instead of his parents' home.
[3] One such incident occurred when Andrew was drinking alcohol following a birthday party he hosted for T.H. in July 2014. Brittni stated Andrew put T.H. in danger because she was inside with other children without adult supervision, while Andrew testified there were children old enough to babysit whom he knew and trusted inside watching T.H.

Brittni claimed Andrew had been disrespectful to her in front of T.H.[4] Brittni also noted Andrew had failed to complete the court-ordered Children in the Middle class. Andrew testified Brittni did not participate in or encourage activities T.H. enjoyed on the farm. Both parties testified Brittni had not been to Andrew's parents' home in approximately two years.

On February 26, 2015, the district court entered a decree dissolving the parties' marriage, dividing their assets and liabilities, and awarding the parties joint legal custody and shared physical care of T.H. The court further ordered Andrew to pay child support to Brittni and established a care schedule alternating care for the child on a weekly basis, with one mid-week evening visit with the other parent. The court incorporated provisions providing for care on holidays, birthdays, and summer visitation. The court did not enter a first-opportunity-to-care provision.[5] Brittni appeals.

**II. Standard of Review.**

We review cases tried in equity, such as dissolution cases, de novo. Iowa R. App. P. 6.907; *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 483–84 (Iowa 2012). We give weight to the factual findings of the district court,

---

[4] Andrew admitted it was difficult living with Brittni while the dissolution proceedings were pending. He testified both parties had called each other names, but never in front of T.H.

[5] Following the court's written order, Andrew filed a motion to enlarge or amend the court's findings and conclusions pursuant to Iowa Rule of Civil Procedure 1.904(2). Andrew's motion asked the court to amend the decree (1) to provide that he would have T.H. in his care every Father's Day and Brittni would have T.H. in her care every Mother's Day, (2) to give him credit for an unencumbered vehicle he brought into the marriage, (3) and to set a specific date by which Brittni was required to move from the marital residence. Brittni filed a resistance, agreeing with Andrew's visitation request, rejecting his claim regarding the vehicle, and asserting she had moved from the residence and therefore, the issue was moot. The court entered an order modifying the decree, providing for amended visitation for the parties on specified holidays and a date by which Brittni was required to vacate the marital residence.

especially when considering the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g). "Prior cases are of little precedential value, except to provide a framework for analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us." *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995).

## III. Discussion.

### A. Physical Care.

When physical care is at issue in marriage dissolution cases, the primary consideration is the best interests of the child. Iowa R. App. P. 6.904(3)(o). Pertinent to our ruling is the application of Iowa Code section 598.41(5)(a) (2013) to these facts. This section states, in part:

> [T]he court may award joint physical care . . . upon the request of either parent. . . . If the court denies the request for joint physical care, the determination shall be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child.

Iowa Code § 598.41(5)(a). Our supreme court has stated "this passage does not create a presumption in favor of joint physical care." *In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007). Rather, our statutory scheme simply makes joint physical care a viable option if it is in the child's best interests. *Id.* "The critical question in deciding whether joint physical care is . . . appropriate is whether the parties can communicate effectively on the myriad of issues that arise daily in the routine care of a child." *In re Marriage of Hynick*, 727 N.W.2d 575, 580 (Iowa 2007). Thus, simply because a parent is not unfit or is a capable parent does not equate to entitlement to joint physical care. As observed in *In re*

*Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007), "Although Iowa Code section 598.41(3) does not directly apply to *physical care* decisions, we have held that the factors listed here as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interest of the child." In discussing some of the factors, the court stated, "In considering whether to award joint physical care where there are two suitable parents, stability and continuity of caregiving have traditionally been primary factors." *Hansen*, 733 N.W.2d at 696. In sum, the factors noted in *Hansen* must still be considered in determining if joint physical care is awarded, notwithstanding two capable or suitable parents. *Id.* Iowa Code section 598.41(5)(a) simply makes an award of joint physical care an option that must be considered if requested, and the court must address any reasons for rejecting the option in its ruling. *Id.*

In determining what custodial arrangement is in T.H.'s best interests, we consider the nonexclusive list of factors enumerated in Iowa Code section 598.41(3) and *Hansen*, 733 N.W.2d at 696. Factors to be considered include (1) continuity, stability, and approximation; (2) "the ability of the spouses to communicate and show mutual respect"; (3) "the degree of conflict between parents"; and (4) "the degree to which the parents are in general agreement about their approach to daily matters." *Hansen*, 733 N.W.2d at 696–99. Not all factors are given equal consideration, and the weight of each factor depends on the specific facts and circumstances of each case. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). "The critical issue is determining which parent will do a better job raising the child; gender is irrelevant, and neither

parent should have a greater burden than the other in attempting to gain custody in an original custody proceeding." *In re Marriage of Decker*, 666 N.W.2d 175, 177 (Iowa Ct. App. 2003). Additionally, a child custody decision is not a reward for a parent's good conduct, nor is it a punishment for bad conduct. *Kleist*, 538 N.W.2d at 277.

Brittni argues the district court should have awarded her physical care of T.H. instead of granting the parties shared physical care. She claims she has historically provided for all of T.H.'s needs and shared care is not in T.H.'s best interests. She also contends she and Andrew are not able to communicate effectively and have a high degree of conflict. Further, she asserts they cannot agree on an approach to routine matters.

The district court found shared physical care to be in T.H.'s best interests. It explained:

> From the evidence presented and the Court's observations at trial, [Brittni] is an excellent and loving mother. She has provided the lion's share of physical care for [T.H.] during her young life. [Brittni] has made sacrifices for her child, is expertly prepared for all circumstances, and has provided [T.H.] with outstanding care. The Court has no doubt that if [T.H.] were to be primarily placed in [Brittni]'s care, both mother and daughter would thrive. However, the Court also finds Andrew is a capable father who loves his daughter. Due to the demands of his job(s) and the flexibility [Brittni] has as an educator, the majority of the physical care duties for [T.H.] were mutually allocated to [Brittni]. Yet, making this choice during marriage does not automatically disqualify Andrew as a physical care parent upon the dissolution of that marriage. Under the law, the Court, if not awarding joint physical care to the parties, must set forth specific findings why not doing so is in a child's best interest. [*See*] Iowa Code [s]ection 598.41(5). The Court is unable to identify any such reasons. . . . [W]hat is best for the child is to have both her parents play a significant and consistent role in her life. Joint physical care is the best option to achieve this goal.

We agree with the district court's findings insofar as both Brittni and Andrew are capable caretakers who love their daughter. Additionally, like the district court, we are not convinced there was sufficient evidence to conclude that Andrew has a problem with alcohol which prevents him from sharing in the physical care of T.H.

We acknowledge the parties did a good job co-parenting during the proceedings. Neither party denied the other contact with T.H., although Andrew once threatened not to be flexible with visitation rights. In particular, we note Brittni offered Andrew time with T.H. during Brittni's visitation time when she would have after-school events and conferences. The record revealed that even after the court entered the temporary order, the parties continued to sit together with T.H. at church. The parties agree on important matters such as discipline, education, and health care, and both have provided care when T.H. was ill. However, doing a good job co-parenting while the dissolution action is pending is not the same as being entitled to joint physical care.

Here, Brittni has historically been the primary caretaker of T.H. She takes T.H. to and from daycare most days. She also arranges T.H.'s medical and dental appointments and takes T.H. to nearly all of the appointments, which total more than thirty in number.[6] Brittni has also been mainly responsible for setting and adhering to a schedule or routine for T.H. Additionally, Brittni has provided full-time attention and care to the child during her summer respite from her job as a school teacher. *See Hansen*, 733 N.W.2d at 696 ("In considering whether to

---

[6] Brittni's sister took T.H. to a few doctor appointments

award joint physical care where there are two suitable parents, stability and continuity of caregiving have traditionally been primary factors. Stability and continuity tend to favor a spouse who, prior to divorce, was primarily responsible for physical care." (Citations omitted)). We modify the district court order to place T.H. in Brittni's physical care with liberal parenting time for Andrew.

Andrew has been lax in respect to T.H.'s safety by driving a vehicle without an infant seat. Andrew drove with T.H. unsecured in the front passenger seat multiple times during the pendency of the case. He only began regularly using an infant seat after Brittni took photographs of T.H. standing in the front seat while Andrew drove. He has also been lax in caring for T.H.'s hygiene and in maintaining any sort of a regular schedule or routine for T.H. To his credit, Andrew has become a more active parent since these proceedings began. Andrew also failed to complete the Children in the Middle course.[7]

Andrew substantially relied upon Brittni to provide the daily caretaking duties of T.H. for the vast majority of T.H.'s short life. Andrew's reliance is telling and is supported by the evidence reflecting that Brittni appears to be an outstanding parent—a conclusion also reached by the district court. We acknowledge there are some factors that support joint physical care, but we conclude the approximation factor is an overwhelming factor in these proceedings, particularly when considering Brittni's willingness to accommodate departures from visitation terms and her ethic to provide for the child's safety, routine, and health.

---

[7] We acknowledge Andrew was enrolled for the course just two weeks before the trial was to begin but the class was cancelled and he was unable to reschedule prior to the trial.

In sum, we conclude there were several reasons why awarding joint physical care is not in the child's best interests. *See* Iowa Code § 598.41(5)(a). First, Brittni was the primary caretaker of the child and awarding joint physical care will abandon this family's own approach to caretaking and will likely not provide an environment in the child's best interests. *Hansen*, 733 N.W.2d at 697. Second, Andrew failed to safeguard the child multiple times by driving his vehicle without T.H. in an infant seat albeit each occasion was a short distance. Third, Andrew did not complete the Children in the Middle program although he made one late attempt to do so. Fourth, although the parties could communicate, they did not agree in regard to T.H.'s hygiene or her need for a daily routine. Brittni has been more attentive to T.H. in both regards. Finally, we are convinced granting Brittni physical care is in the child's best interests because Brittni has been flexible in modifying care periods and has shown she will share information such as medical appointments with Andrew. As the physical caretaker, Brittni's formal training and experience as an educator will serve to benefit T.H.'s best interests.[8] Upon our de novo review, we conclude Brittni should be awarded physical care of T.H.

**B. First Opportunity to Care.**

Brittni maintains the district court should have included a first-opportunity-to-care provision, which would be effective for both parents if either was

---

[8] *See In re Marriage of Clark*, No. 12-2192, 2013 WL 3291834, at *3 (Iowa Ct. App. June 26, 2013) ("[The mother's] considerable childcare education—and her experience applying that education to the care of her own children and others—further supports an award to her of physical care.").

unavailable to personally care for T.H. for a period exceeding two hours during their scheduled parenting time with T.H.

In establishing visitation rights, our governing consideration is the best interests of the children. *In re Marriage of Stepp*, 485 N.W.2d 846, 849 (Iowa Ct. App. 1992). Generally, liberal visitation is in a child's best interests as it maximizes physical and emotional contact with both parents. *See* Iowa Code § 598.41(1)(a). Here, because the parents have a history of being able to communicate, we believe the first-opportunity-to-care provision is workable. However, we decline to adopt Brittni's proposed "trigger" of two hours. Rather, we modify the decree to include a provision granting each party a reasonable first opportunity or right to care for T.H. At a minimum, the parties shall communicate if the other party is unable to provide the child's care for eight hours or more.

### C. Appellate Attorney Fees.

Both parties ask this court to award them appellate attorney fees. An award of appellate attorney fees rests within the discretion of this court. *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). In exercising this discretion, we consider "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *In re Marriage of Applegate*, 567 N.W.2d 671, 675 (Iowa Ct. App. 1997). The relative merits of the appeal are also a factor. *McDermott*, 827 N.W.2d at 687. Any award of fees must be fair and reasonable. *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994). Because Andrew earns approximately twice as much as Brittni and because

Brittni has been successful on appeal, we award Brittni $1500 in appellate attorney fees.

**IV. Conclusion.**

Because Brittni has been the primary caregiver of T.H., we conclude it is in T.H.'s best interests to modify the district court's award of joint physical care and place the child in Brittni's physical care with liberal parenting time for Andrew. We also modify the order to include a first-opportunity-to-care provision. We remand to the district court for the determination of an appropriate parenting schedule and child support obligation. On remand, the district court shall modify the obligation "based on the present financial circumstances of the parties and the child support guidelines." *See In re Marriage of Hoffman*, 867 N.W.2d 26, 37 (Iowa 2015). Additionally, we award Brittni $1500 in appellate attorney fees.

**AFFIRMED AS MODIFIED AND REMANDED.**

McDonald, J., concurs; Mullins, J., dissents.

**MULLINS, Judge.** (dissenting)

For the reasons below, I respectfully dissent from the opinion of the majority.

The district court explained:

> Under the law, the Court, if not awarding joint physical care to the parties, must set forth specific findings why not doing so is in a child's best interest. [*See*] Iowa Code [§] 598.41(5). The Court is unable to identify any such reasons.
>     On the contrary, the Court finds it is in [T.H.]'s best interest to split physical care time with the parties so as to maximize her contact with two parents that have her best interest at heart. Neither parent will get as much time with [T.H.] as they otherwise would if this marriage would have remained intact. That is a truism. And both parties will suffer to some degree from this reality. However, what is best for the child is to have both her parents play a significant and consistent role in her life. Joint physical care is the best option to achieve this goal.

Iowa Code section 598.41(5)(a) requires that if a court denies a request for joint physical care, "the determination shall be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child." "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court, but is not bound by them." Iowa R. App. P. 6.904(3)(g).

The trial of this case took three days. The district court had ample time to observe the demeanor of the parties and consider the credibility of the witnesses. At the conclusion of the trial, the court issued a thorough fifteen-page ruling. It is clear the court made credibility determinations in ruling on what it believed to be a best-interests determination.

The majority opinion hinges the physical care determination on the approximation factor from *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). I believe the majority puts too much emphasis on that factor without adequate consideration of the future best interests of the child. "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695. I submit the emphasis should be placed on the child's future, not the past as influenced by the approximation factor. The district court specifically found that "[a]fter the commencement of this action (and under the temporary care order) Andrew has become more involved in these matters [of daily care]."

Although the majority makes "findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child" as required by Iowa Code section 598.41(5)(a), I believe the findings are unnecessarily picky and dealing in minutia.[9] Further, I submit the majority focuses too heavily on what the approximation factor says about the past and not enough on what the evidence shows is in the long-term future best interests of T.H.[10] I give greater weight to the district court's fact findings after it had three

---

[9] Does our court really want to say a parent should be denied physical custody for occasionally driving to the farm without the child in an infant seat? Andrew's failure to attend Children in the Middle before trial was because the class was cancelled due to weather.

[10] Under the facts of this case, I am troubled by the preference, nay presumption, given to Brittni because she is a school teacher. This is not a case in which the child has special needs or there are other special circumstances. The mere educational background and professional designation of a parent should not be a pivotal factor—and is not a statutory factor—in a best interests determination, absent specific facts making such a designation appropriate under our statutory criteria.

days to observe the parties and make credibility determinations. On a de novo review, we should be slower to substitute our judgment based on a cold, hard record. *See In re Marriage of Dunkel*, No. 12-0795, 2012 WL 5954579, at *2 (Iowa Ct. App. Nov. 29, 2012) ("In close cases, we give careful consideration to the district court's findings."); *In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) ("Generally, we give considerable deference to the district court's credibility determinations because the court has a firsthand opportunity to hear the evidence and view the witnesses."). The record clearly shows both parents love T.H. and put her needs first. T.H. was thriving socially, academically, and emotionally under the temporary shared care order. The record indicates the parties are able to sufficiently communicate in a joint physical care arrangement and effectively coparent their child. Based upon this evidence and the credibility determinations made by the district court, I would affirm the district court's best-interests determination that "what is best for the child is to have both her parents play a significant and consistent role in her life. Joint physical care is the best option to achieve this goal."

Also, I differ from my colleagues on their resolution of the first-opportunity-to-care provision. Brittni asserts the district court erred in failing to include a first-opportunity-to-care provision, which would be effective for both parents if either was unavailable to personally care for T.H. for a period exceeding two hours during their scheduled visitation with T.H. Brittni raised this claim in the joint pretrial statement and in her testimony at trial. However, the court did not rule on the issue in its decree, and Brittni did not file a rule 1.904(2) motion requesting

that the court rule on the issue. Therefore, I would find it is not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal. . . . When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." (citations omitted)).

Accordingly, I respectfully dissent.