In re the **MARRIAGE of Marcy Kay DECKER and Vincent Drew Decker.**

Upon the **Petition of Marcy Kay Decker, Petitioner–Appellee,**

and

Concerning **Vincent Drew Decker, Respondent–Appellant.**

No. 02–1846.

Court of Appeals of Iowa.

May 29, 2003.

Sarah Cochran of Foss, Kuiken, Gookin & Cochran, P.C., Fairfield, for appellant.

James McGrath of McGrath & McGrath, P.C., Keosauqua, for appellee.

Considered by SACKETT, C.J., and HUITINK and VOGEL, JJ.

SACKETT, C.J.

Vincent Drew Decker appeals from the custodial and financial provisions of the decree dissolving his marriage to Marcy Kay Decker. Vincent contends (1) he, not Marcy, should have been awarded primary physical care of the parties' two children, Torrent, born November 11, 1996, and Canyon, born November 24, 1999, and (2) the financial provisions made in the decree were not equitable. We affirm.

Vincent and Marcy were married on August 5, 1995. In August of 2001 Marcy took the two children and left the home

where the couple was residing. She moved in with her mother and her mother's boyfriend. Two days later she filed a petition for dissolution of marriage. Marcy kept the children from Vincent for a short period, but then temporary custody was awarded to Marcy. Vincent was awarded visitation and ordered to pay child support. Vincent paid all ordered child support and exercised the scheduled visitation.

Upon hearing the evidence, the district court found both parties were good parents and that the children were bonded to both of them. The court named Marcy the primary physical custodian, finding that she was a good, dependable, and experienced custodian and would see that the children maintained their relationship with Vincent. Vincent was named joint custodian, given visitation, and was ordered to pay child support in the amount of $993 a month and to provide medical insurance and pay certain uncovered medical expenses.

█ Vincent first contends he should have been named the physical custodian, as his life is more stable than Marcy's.

█ The controlling consideration in determining custody is the best interest of the child. Iowa R.App. P. 6.14(6)(*o*). In deciding this question, we review the record de novo. Iowa R.App. P. 6.4. We give weight to the findings of the trial court, but are not bound by them. *See In re Marriage of Novak,* 220 N.W.2d 592, 597 (Iowa 1974). There is no inference favoring one parent as opposed to the other in deciding which one should have custody. *See In re Marriage of Bowen,* 219 N.W.2d 683, 688 (Iowa 1974). We determine each case on its own facts to decide which parent can administer more effectively to the long-range interest of the child. *In re Marriage of Winter,* 223 N.W.2d 165, 166 (Iowa 1974). The critical issue is determining which parent will do a better job raising the child; gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in an original custody proceeding. *See In re Marriage of Ullerich,* 367 N.W.2d 297, 299 (Iowa Ct.App.1985).

To support his position on the custody issue Vincent points to his long-term employment at Rockwell Collins and the fact that he continues to reside in what the children knew as their family home. He advances that excellent childcare is available at his worksite, which would provide him the opportunity to participate in the children's activities, and that he would be able to spend more hours with the children than Marcy. He notes that the childcare facility has first-aid certified staff and is more reliable than the many childcare providers Marcy uses. Vincent further contends Marcy does not adequately supervise the children. He has concern about Marcy's boyfriend, who lives in her home, and about the other men with whom Marcy connected on the Internet during the time the parties lived in the same home. He notes that the man she is now living with had some twenty-five convictions, the majority of which are related to alcohol abuse or driving or driver's license questions. He acknowledges he did not want his marriage dissolved and is of the opinion that fact has been held against him.

Vincent contends the district court was not correct in finding that he was controlling and rigid, and he contends Marcy and the district court were incorrect about some of the requirements of the Baptist church to which he belongs. He contends while his church is important to him, it does not interfere with his ability to raise his children.

Marcy's response to Vincent's arguments for reversal is that we must give deference to the district court's determination, and we should not disturb it on appeal. Marcy contends the district court found her more credible and focuses on several issues where she and Vincent disagreed on certain issues. We agree with Marcy that we give deference to the district court's assessment of the credibility of witnesses. Iowa R.App. P. 6.14(6)(*g*); *In re Marriage of Callahan,* 214 N.W.2d 133, 136 (Iowa 1974); *Melchiori v. Kooi,* 644 N.W.2d 365, 369 (Iowa Ct.App.2002). Despite the deference we have given the district court, we must still review the record de novo on the issues raised, and Marcy's failure to specifically respond to Vincent's arguments makes that review more difficult.

Marcy and Vincent were both employed outside the home at the time of their marriage. By agreement of the parties, upon the older child's birth Marcy became the child's primary caretaker, as it was Vincent who had the full-time, well-paying job with health insurance and other benefits. Their life revolved in large part around their children and the Baptist church. They purchased a home and acreage, and other than a mortgage on it, were debt free. Vincent apparently had ideas about maintaining a traditional-type family arrangement with which Marcy did not agree. Obviously feeling somewhat isolated with the care of two young children, she began exploring the outside world through the internet and was corresponding with several men which understandably caused Vincent distress. With the marriage not going well, Marcy packed up the two children in August of 2001 and moved in with her mother and her mother's boyfriend. Two days later she filed a petition for dissolution of marriage. She let Vincent see the boys several times and then denied him visitation until a temporary custody order was entered, placing the children in her custody and providing Vincent have visitation, which he exercised. From Vincent's personal notes of the visitation, it is apparent that he engaged the children in age-appropriate activities and spent quality time with them. In addition to exercising scheduled visitation, Vincent promptly paid all court-ordered temporary support.

Marcy has been the primary-care parent, and we give this weight. The fact a parent was the primary caretaker prior to separation does not assure he or she will be the custodial parent. *In re Marriage of Kunkel,* 546 N.W.2d 634, 635 (Iowa Ct.App.1996); *see also In re Marriage of Toedter,* 473 N.W.2d 233, 234 (Iowa Ct.App.1991) (affirming physical care with father despite mother's role as primary caretaker); *Neubauer v. Newcomb,* 423 N.W.2d 26, 27–28 (Iowa Ct.App. 1988) (awarding custody of a child who had been in mother's primary care for most of life to father).

At the time of the dissolution hearing Marcy was seeking a nursing degree and had about another year of education. She was doing well in her studies, and besides attending school on a full-time basis, was employed for about nine hours a week. Vincent also was seeking additional education on a part-time basis, as it would provide him with an enhanced position at his current employer. Either parent, if granted primary physical care, will be required to have outside child care providers. Marcy's hours are not regular, but she has been able to use various extended family members for child care. She currently uses various extended family members to provide the children with care from her family, but this is inconsistent care.

Vincent has more regular hours. He also has available to him as an employee of Rockwell access to child care from the

Rockwell Child Development Center. This center, available only to Rockwell employees, is on the Rockwell campus. It follows the Rockwell calendar and allows for employed parents' participation in class activities, field trip meetings, and lunches with the children. The staff is employed through the Cedar Rapids School District, and there are specific requirements for staff education and staff-to-child ratios. The planned curriculum incorporates play in a weekly learning theme. Rockwell deserves praise for providing such a facility for its employees' children, and the environment would provide the children with more consistency than the childcare arrangement Marcy now uses.

■ Regarding other adults in the household, Marcy has not sought to address the relationship with her live-in companion. The record shows neither of them yet considers it to be a long-term commitment. While we understand Marcy's need for adult companionship, if a parent seeks to establish a home with another adult, that adult's background and his or her relationship with the children becomes a significant factor in a custody dispute. There are two reasons for this: (1) because of the place the companion will have in the child or children's lives, and (2) not less significantly, because the type of relationship the parent has sought to establish and the manner he or she has established it is an indication of where that parent's priority for his or her children is in his or her life.

The district court was concerned with Marcy's current relationship. The district court found, and we find no reason to disagree with her conclusions, that no sexual activity with the new companion took place in the children's presence. The inquiry does not stop here. Other than the numerous charges Marcy's companion has had, most of which are three to five years old, and the fact he contributes one half of the expenses of the household, there is little in the record that establishes him either as a good or bad influence on the children.

We agree with the district court's stated concern about this relationship's effect on the children but accept the district court's determination that this should not preclude Marcy from receiving primary care.

■ Vincent argues the district court sought to believe Marcy's version of his religion, and he contends the district court held his religious beliefs against him. We do not believe the district court considered Vincent's religious beliefs and practices as a factor in determining primary physical care. We do not consider them a factor weighing against Vincent's claim for primary physical care on our de novo review. We recognize Vincent has the constitutional right to practice the religion of his choosing. *In re Marriage of Anderson,* 509 N.W.2d 138, 141 (Iowa Ct.App.1993); *see also Loney v. Scurr,* 474 F.Supp. 1186, 1196 (S.D.Iowa 1979). It would be unconstitutional for us to put any restraint on the exercise of either of these parties' religious freedom. *Anderson,* 509 N.W.2d at 141. We do not favor one religion over another in a custody determination. *Id.; see also In re Marriage of Rodgers,* 470 N.W.2d 43, 45 (Iowa Ct.App.1991); *Gould v. Gould,* 116 Wis.2d 493, 342 N.W.2d 426, 432–33 (1984). However, we do consider in Vincent's favor values that he subscribes to as a part of his religion such as honesty, kindness, and responsibility to family. *Anderson,* 509 N.W.2d at 142; *see also McNamara v. McNamara,* 181 N.W.2d 206, 209–10 (Iowa 1970).

The court found Marcy has shown the ability to see that the children keep in contact with Vincent and has the insight to shelter the children from conflict between their parents. She found Vincent to have

controlling behaviors. Marcy contends Vincent should have sought more visitation than was specified in the temporary custody order. Vincent testified that Marcy was so difficult in letting him have telephone contact with the children that he did not feel it was in their interest for him to seek additional visits. Our review of the record convinces us that neither Marcy nor Vincent has made the efforts that should and could have been made to support the position of the other parent in their children's lives. They both took a Children in the Middle class, and we can only trust they will each take the lessons taught there to heart. Their failure to cooperate is not in their children's interest. They further need to be aware that the Iowa courts do not tolerate hostility exhibited by one parent to the other. In *In re Marriage of Rosenfeld*, 524 N.W.2d 212, 215 (Iowa Ct.App.1994), we addressed a situation where each parent sought to put the other parent in an unfavorable light and considered it a factor in modifying a custody award. *See also In re Marriage of Udelhofen*, 444 N.W.2d 473, 474–76 (Iowa 1989); *In re Marriage of Leyda*, 355 N.W.2d 862, 865–67 (Iowa 1984); *In re Marriage of Wedemeyer*, 475 N.W.2d 657, 659–60 (Iowa Ct.App.1991). Vincent's wish that there not be a divorce and that there should be strong commitments to marriage are factors in his favor. However, it takes two to want to be married, and Marcy clearly does not want to be married to Vincent. She is seeking a different life. Vincent's inability to accept her position and his dwelling on the factors that contributed to the breakup of his marriage have gotten in the way of a relationship with Marcy that is in the children's interest.

The question is always which parent will do the better job of raising the children. *In re Marriage of Rodgers*, 470 N.W.2d 43, 44 (Iowa Ct.App.1991). Marcy's position as the children's primary care parent, a position she accepted by agreement with Vincent, weighs heavily in her favor. The child care available to Vincent through his employer is a strong point in his favor. The fact Marcy has brought a man with less than stellar credentials to live in her home does not weigh in her favor, nor does Vincent's tendency to focus on factors that are detrimental to their children's relationship with their mother weigh in his favor. Considering these and other factors in the record, we affirm the district court on this issue.

■ Vincent also challenges the equity of the financial provision made by the district court. The district court divided the assets and liabilities so that based on the district court's valuations, Marcy received $11,391 and Vincent received $20,400. To reach these figures Vincent was ordered to pay Marcy $19,000 in cash. In addition, Vincent was ordered to pay $5,230 towards Marcy's attorney fees. Vincent first contends the district court should have valued the personal residence of the parties at $94,400 rather than $115,000. The home was valued at the higher figure when the parties refinanced it in 2001. The lower figure represents an appraisal that Vincent secured from a Certified General Real Property Appraiser on March 13, 2002. The first appraisal had been completed eighteen months before trial, which was on September 11, 2001. The property was assessed for tax purposes by the county assessor at $79,000. Vincent contends the house should have been valued by the district court at $94,500.

We defer to the trial court when valuations are accompanied with supporting credibility findings or corroborating evidence. *In re Marriage of Vieth*, 591 N.W.2d 639, 640 (Iowa Ct.App.1999). We find the valuations assigned by the trial

court to the personal residence to be within the permissible range of evidence. *See In re Marriage of Brainard,* 523 N.W.2d 611, 616 (Iowa Ct.App.1994).

Vincent next contends the district court should have determined the equity the parties had in their home by subtracting the mortgage balance at the time the parties separated from the home's value rather than by using the mortgage balance at the date of trial. Vincent contends he kept the payment current from the time of separation to the date of trial, so it is only fair that he benefit from the equity acquired as a result of these payments.

The date of the dissolution is the only reasonable time when an assessment of the parties' net worth should be undertaken. *Locke v. Locke,* 246 N.W.2d 246, 252 (Iowa 1976); *Schantz v. Schantz,* 163 N.W.2d 398, 405 (Iowa 1968). We value property for division purposes at its value at the time of the dissolution. *See Locke,* 246 N.W.2d at 252. It is the net worth of the parties at the time of trial which is relevant in adjusting property rights. *In re Marriage of Muelhaupt,* 439 N.W.2d 656, 661 (Iowa 1989); *In re Marriage of Moffatt,* 279 N.W.2d 15, 20 (Iowa 1979). Expenditures made during a separation should, in some cases, be considered in making an equitable distribution. *In re Marriage of Fall,* 593 N.W.2d 164, 168 (Iowa Ct.App.1999). However, we find nothing here that justifies doing so, and we find no reason to disagree with the district court's refusal to do so.

Vincent also contends the district court abused its discretion in ordering Vincent to pay $5230 to Marcy's attorney fees. We review for an abuse of discretion. *Muelhaupt,* 439 N.W.2d at 663. We affirm on this issue.

**AFFIRMED.**