# IN THE COURT OF APPEALS OF IOWA

No. 17-2028
Filed September 12, 2018

IN RE THE MARRIAGE OF CHRISTI ANNE FICEK
AND LAWRENCE PETER FICEK, JR

Upon the Petition of
CHRISTI ANNE FICEK,
        Petitioner-Appellant,

And Concerning
LAWRENCE PETER FICEK, JR.,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Linn County, Kevin McKeever, Judge.


        Christi Ficek appeals from the decree dissolving her marriage to Lawrence Ficek.  **AFFIRMED.**


        John C. Wagner of John C. Wagner Law Offices, PC, Amana, for appellant.

        Caitlin L. Slessor and Kerry A. Finley of Shuttleworth & Ingersoll, PLC, Cedar Rapids, for appellee.


        Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

Christi Ficek appeals from a decree dissolving her marriage to Lawrence Ficek. Christi argues the district court erred by granting the parties joint physical custody of their child and awarding Lawrence part of Christi's retirement account and pension account. Because joint physical care is in the best interests of the child, we affirm the decree's physical care arrangement. Also, because of Lawrence's financial and nonfinancial contributions to the marriage, we affirm the district court's property distribution. We decline to award either party appellate attorney fees and tax costs to both parties equally.

## I. Background Facts and Proceedings

Christi, born in 1974, and Lawrence, born in 1969, were married in 2007. They have one child together, L.M.F., born in 2007.[1] Christi is employed as the director of operations at an employee benefits sales company earning approximately $91,250 per year. Lawrence is self-employed and earns approximately $40,000 per year.

Christi filed a petition for dissolution of the marriage in December 2015. A trial was held, beginning on July 5, 2017. On July 27, the district court filed a decree of dissolution that ordered joint legal custody and joint physical care of their child. Christi was ordered to pay $390.60 per month in child support. Lawrence was awarded one-half of the marital portion of Christi's retirement account and one half of her pension account. Christi appeals.

---

[1] Christi has adult twin girls that are not children of this marriage. Lawrence had one biological child from a previous marriage and acted as the parent to another child; both children are deceased.

## II. Standard of Review

We review dissolution actions de novo as they are heard in equity. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "[W]e examine the entire record and adjudicate anew the issue of the property distribution." *Id.* While we give weight to the findings of the district court, particularly concerning the credibility of witnesses, we are not bound by those findings. *Id.* However, "[w]e will disturb the district court's ruling only when there has been a failure to do equity." *Id.* (quotation marks and citations omitted).

## III. Physical Care

The question of physical care must be determined based on what is in the best interest of the child. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). "The ultimate objective of a physical care determination is to place the child in the environment most likely to bring him to healthy mental, physical, and social maturity." *McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010). Stability and continuity in caregiving are primary factors in determining an award of physical care. *Hansen*, 733 N.W.2d at 696 (citing *In re Marriage of Decker*, 666 N.W.2d 175, 178–80 (Iowa Ct. App. 2003)). Past caretaking patterns, including primary caregiving, weigh heavily in custody matters. *Id.*

The district court gave the parties joint physical care of the minor child. Christi contends the district court should have granted her physical care. She argues that she primarily tended to the needs of their child throughout his early years and Lawrence was absent for significant periods of time prior to their separation. The district court found that both parents love and care for their child

and both have a strong bond with him that results in shared care being in the child's best interests.

Christi testified that she would take L.M.F. to appointments and school approximately "ninety percent" of the time. She testified that Lawrence attended L.M.F.'s appointments "three or four times" and he would not sign off on L.M.F.'s homework for school while she made sure that it was done. In addition, Christi testified that she would do "ninety percent" of the feeding when L.M.F. was a newborn. Christi also described Lawrence as possessing a "short tempter" and described he could be loud at times and "pinch L.M.F.'s ear" when L.M.F. was not acting appropriately. Christi testified that Lawrence's temper affected the parties' communication and there were instances where Lawrence would speak ill about her in front of L.M.F. by inappropriately involving him in conversations about the parties' court dates.

Lawrence agreed that Christi probably did more with L.M.F. when L.M.F. was little but asserts that he did a lot of the work with L.M.F. when L.M.F. was entering pre-school, about age three. Lawrence testified that around that time, Christi was earning promotions and spending a lot of time travelling. Lawrence indicated that he is active in L.M.F.'s schoolwork and, although he did not see or sign as many school documents and homework assignments as Christi did, he was present in the classroom at times and attended "every single" parent–teacher conference. He disputed Christi's claim that he had a "short temper," and he noted Christi used similar forms of discipline as he did, including washing L.M.F.'s mouth out with soap. Lawrence also disputed Christi's assertion that they had

communication problems by providing numerous civil text messages and photos relating to visitation, health, and various schedules for L.M.F.

Upon our review of the record, we agree with the district court that joint physical care is in L.M.F.'s best interests. We give weight to the district court's findings on the credibility of witnesses. *In re Marriage of Witten*, 672 N.W.2d 768, 778 (Iowa 2003). From both parties' testimony, it is clear that Christi provided a majority of L.M.F.'s care when he was very young, but it is also clear that Lawrence has since provided care and is engaged in various activities with L.M.F. The district court found that any conversations about these legal proceedings "may have been ill advised" but "were not the product of any ill intent." We agree with the district court's assessments of the many back-and-forth complaints the parties have about each other.

We also find that it is in L.M.F.'s best interest for his parents to continue to have his joint physical care. This is the environment that will likely bring L.M.F. to healthy mental, physical, and social maturity. Accordingly, we affirm the district court's order to continue the joint physical care arrangement.

## IV. Retirement Account

Christy next asserts Lawrence should not have been awarded a portion of her retirement account because he failed—primarily financially—"to contribute to the marriage." We examine the entire record and adjudicate anew the issue of property distribution. *McDermott*, 827 N.W.2d at 676. Marital property is divided equitably, considering the factors in Iowa Code section 598.21(5) (2015). *See id.* at 678. Among the statutory factors considered are the length of marriage, premarital property, contributions of each party to the marriage, age of the parties,

emotional and physical health of the parties, earning capacity of each party, and others. *See* Iowa Code § 598.21(5). The court must consider both financial and non-financial contributions in determining an equitable distribution. *In re Marriage of Fennelly*, 737 N.W.2d 97, 103–04 (Iowa 2007).

The district court awarded Lawrence a portion of Christi's retirement account and pension account through Qualified Domestic Relations Orders. Christi filed a motion to amend and enlarge, asserting Lawrence wasted marital assets and it was inequitable for him to receive any part of her retirement or pension account. *See* Iowa Code § 598.21(5)(c) (dividing all property equitably by considering the contribution of each party and giving value to each contribution in homemaking and child care services). Christi primarily argues that she contributed more financially to the marriage and Lawrence's tax issues created a burden on their finances. However, marriages do not come with a ledger. *Fennelly*, 737 N.W.2d at 103 (citing *In re Marriage of Miller*, 552 N.W.2d 460, 464 (Iowa Ct. App. 1996)). Spouses may make many contributions to their marriage, including love, support, and companionship, and their total contributions cannot be reduced to a dollar amount. *Id.* at 104. "Financial matters . . . must not be emphasized over the other contributions made to a marriage in determining an equitable distribution." *Id.*

The district court held:

> [Christi] claims that [Lawrence] has wasted marital assets because he was underemployed and irresponsible with his finances and tax responsibilities. The court does not agree. [Lawrence] is obviously not good at managing money and has not chosen the most lucrative career for himself. However, he has contributed to the marriage based on his financial ability to do so. He certainly could have done a better job, but he did make contributions. Therefore,

the court finds that this was not a situation that can be classified as marital waste.

In this case, both parties contributed to the marriage in ways that cannot be reduced to a dollar amount. Both worked outside the home, including Lawrence's travel to Texas and Des Moines for work. Both cared for the children, especially L.M.F., who has developed a strong bond with both of his parents.

Considering all of the facts and circumstances of this case, we find the district court equitably divided the parties' marital property. Despite Christi providing more for the marriage financially, Lawrence worked or attempted to find work, and he made nonfinancial contributions over the life of the marriage. He did not shirk his duties. *See id.* Accordingly, we affirm the district court's division of the retirement account and pension account.

## V. Appellate Attorney Fees

Christi and Lawrence both request appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). Whether appellate attorney fees should be awarded depends upon factors which include "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). We have considered these factors and decline to grant either party attorney fees. Costs shall be taxed equally to both parties.

## VI. Conclusion

Because joint physical care is in the best interests of L.M.F. we affirm the decree's physical care arrangement. Also, because of Lawrence's financial and

nonfinancial contributions to the marriage, we affirm the district court's property distribution. We decline to award either party appellate attorney fees and tax costs to both parties equally.

**AFFIRMED.**

Tabor, J., concurs; Danilson, C.J., partially dissents.

**DANILSON, Chief Judge (concurring in part and dissenting in part).**

I respectfully dissent on the issue of physical care, but concur in all other respects. I would reverse in part to award Christi physical care of the minor child. Christi has far more actively parented the child than has Lawrence. Christi has also maintained stable employment and a residence. Also, she is well organized in her life's affairs and tends to the child's educational needs. Lawrence, on the other hand, lacks stability in his employment, residence, and financial affairs. He acknowledges a lack of patience and has shown little responsibility towards the child's academic needs.