**IN THE COURT OF APPEALS OF IOWA**

No. 18-0203
Filed October 10, 2018

**ROBYN BROWN,**
        Plaintiff-Appellant,

**vs.**

**LAYNE IRWIN,**
        Defendant-Appellee.

_____

        Appeal from the Iowa District Court for Muscatine County, Thomas G.

Reidel, Judge.

        Mother appeals from a decree establishing paternity, custody, and support.

**AFFIRMED AS MODIFIED AND REMANDED.**

        Robert S. Gallagher and Peter G. Gierut of Gallagher, Millage & Gallagher,

P.L.C., Bettendorf, for appellant.

        Jennie L. Clausen and Ryan M. Beckenbaugh of H.J. Dane Law Office,

Davenport, for appellee.

        Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**McDONALD, Judge.**

Robyn Brown appeals from the district court's ruling on her petition to establish paternity, custody, visitation, and child support with respect to her child L.I. In the challenged ruling, the district court established paternity of the child in Layne Irwin, granted the parties joint legal custody of the child, granted the parties joint physical care of the child, ordered visitation with the child, and ordered child support. On appeal, Brown challenges the physical care determination.

Our review is de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). "We review the entire record and decide anew the factual and legal issues preserved and presented for review." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). However, "[w]e give weight to the findings of the district court, especially to the extent credibility determinations are involved." *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007).

The record reflects the following. Brown and Irwin met in 2014 in Kirksville, Missouri. Brown resided in Kirksville and worked as a bartender. Irwin resided in Davenport but spent time in Kirksville while working as an electrician on a project. Irwin frequented the bar where Brown worked when he was in Kirksville. They met, and they commenced a long-distance romantic relationship.

The parties continued their long-distance relationship until shortly after L.I.'s birth in July 2015. At that time, the parties decided Brown (and her two older sons from prior relationships) would move to Iowa and the parties would reside together. In anticipation of Brown's move, Irwin purchased a home in Wilton, Iowa. Brown and her three sons moved from Kirksville to Wilton into Irwin's home.

The parties cohabited until May 2017. At that time, Brown filed the petition at issue in this appeal, seeking physical care of L.I. Brown also filed a motion seeking permission to move back to Kirksville with L.I. Without waiting for a ruling on her motion, Brown vacated the family home and moved with all three children back to Kirksville. Kirksville is approximately 180 miles from Wilton. Irwin sought a temporary injunction to prohibit the move. The district court entered an order on temporary matters directing the parties to alternate care of L.I. on a weekly basis until the matter was resolved. The parties alternated care of the child as ordered by the district court.

After trial, the district court awarded the parties joint physical care of the child on an alternating-week basis. However, the district court ordered the child to attend school in Wilton and ordered Irwin to pay Brown's relocation expenses. The relevant portion of the order follows:

> [u]nder these circumstances, the Court finds that joint physical care shall be awarded to the parties. The parties shall continue to alternate weeks. The minor child shall attend school in Wilton, Iowa unless otherwise agreed upon by the parties. If Robyn relocates to the Wilton area, Layne shall provide Robyn $2,000 to assist with the move and the costs of a new residence. Layne shall provide this amount to Robyn within 10 days of the request. Robyn does not have to provide proof to Layne of any costs associated with the move or the new residence. When the parties live within thirty miles of each other, the party not exercising a one- week block of parenting time shall be entitled to a midweek visit from after school (4:00 p.m. in the summertime) until 7:30 p.m.

In effect, the district court ordered Brown to return to Iowa or to file a modification petition before L.I. enrolled in school. The district court deemed this the best resolution because of Wilton's "excellent educational system," state-assisted

daycare programs, Brown's oldest son's ability to assist in daycare duties, and the proximity of the parents to one another.

With that background, we turn to the merits. This is an action to establish paternity, custody, and care of a minor child between unmarried persons filed pursuant to Iowa Code chapter 600B (2017). Our analysis with respect to who should have physical care of the child is the same whether the parents are married or unmarried. *See* Iowa Code § 600B.40 (providing the statutory criteria set forth in section 598.41, for dissolutions of marriage, shall apply the chapter 600B proceedings); *Draeger v. Barrick*, No. 15-1442, 2016 WL 1697083, at *3 (Iowa Ct. App. Apr. 27, 2016).

The Code defines "physical care" as "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." Iowa Code § 598.1(7). In making the physical care determination, we look to the factors set forth in Iowa Code section 598.41(3) and enumerated in our case law. *See Marriage of Hansen*, 733 N.W.2d at 696–700; *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). "Each factor, however, does not necessarily impact the decision with equal force." *In re Marriage of Daniels*, 568 N.W.2d 51, 54 (Iowa Ct. App.1997). In considering these factors, our "ultimate objective . . . is to place the child in the environment most likely to bring him to healthy mental, physical, and social maturity." *McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010). "The controlling consideration is the best interests of the child." *Stieneke v. Sargent*, No. 15–1643, 2016 WL 2745058, at *1 (Iowa Ct. App. May 11, 2016) (citation omitted). The best interest of the child includes but is not limited to the opportunity for maximum continuous physical and emotional contact with both parents, unless

direct physical or significant emotional harm to the child may result from this contact.

Shared physical care is not a viable option under the circumstances presented. The parties reside approximately 180 miles—approximately a three-hour drive—away from each other. While the parties have managed to alternate care on a weekly basis during the pendency of this proceeding, we question whether such an arrangement is in the best interest of the child. Regardless, as a practical matter, the ordered arrangement cannot continue indefinitely. The child will age, enroll in school, become involved in extracurricular activities, and develop friendships. The natural progression of things will make alternating residences on a weekly basis not possible. The district court appeared to recognize as much when it effectively ordered Brown to move to the Wilton area when the child reaches school age. In short, the distance between the parties makes an award of joint physical care impracticable, not in the best interest of the child, and inappropriate. *See, e.g., In re Marriage of Orr*, No. 16-1772, 2017 WL 2183891, at *2 (Iowa Ct. App. May 17, 2017) (stating an award of joint physical care is "impracticable" when the parties lived two hours from each other); *In re Marriage of Albertsen*, No. 16-1644, 2017 WL 4570478, at *3 (Iowa Ct. App. Oct. 11, 2017) ("The distance, however, made a joint physical care arrangement unfeasible and required the district court to choose one of two loving parents as a physical caretaker."); *In re Marriage of Metcalf*, No.06-0324, 2006 WL 3018228, at *1 (Iowa Ct. App. Oct. 25, 2006) ("The current agreement of the parties—alternating weeks—is unworkable when the parties reside in two different school districts with approximately an hour drive in-between.").

"When joint physical care is not [appropriate], the court must choose one parent to be the primary caretaker, awarding the other parent visitation rights." *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007). We are guided by the best interest of the child. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). "The critical issue is determining which parent will do a better job raising the child; gender is irrelevant, and neither parent should have a greater burden than the other in attempting to gain custody in an original custody proceeding." *In re Marriage of Decker*, 666 N.W.2d 175, 177 (Iowa Ct. App. 2003). Iowa long ago abandoned the inference that the best interest a child is served if custody is awarded to their mother instead of the father. *See In re Marriage of Bowen*, 219 N.W.2d 683, 688 (Iowa 1974).

On de novo review, we conclude Brown should be awarded physical care of the child with Irwin awarded liberal visitation. There are several considerations in support of our conclusion. First, Brown historically has been the primary caregiver for the child at issue. *See Hansen*, 733 N.W.2d at 696 ("[S]tability and continuity of caregiving are important factors that must be considered in custody and care decisions."); *In re Marriage of Ford,* 563 N.W.2d 629, 633 (Iowa 1997) (considering parent's status as primary caregiver). After the birth of the child in Kirksville and prior to Brown's move, Brown provided the exclusive care of the child without assistance from Irwin. When Brown moved to Wilton, the parties agreed Brown would have the caregiving responsibilities while Irwin would continue to work outside the home. Brown took care of L.I.'s daily needs, including bathing, diapering, clothing, feeding, and caring for the child. She did household tasks, including cooking, cleaning, and laundry. She scheduled the child's medical

appointments and took the child to the same. *See, e.g., In re Marriage of Heitman*, No. 15–0631, 2016 WL 742816, at *5 (Iowa Ct. App. Feb. 24, 2016) (considering which parent arranges medical and dental appointments as a relevant factor). The child has thrived under the parties' arrangement. "[C]ourts . . . typically afford[] weight to the parent who has acted as the child's primary caretaker in the past." *Ruden v. Peach*, 904 N.W.2d 410, 414–15 (Iowa Ct. App. 2017).

Second, the record reflects Brown can minister more effectively to the needs of the child. Brown has proven to be a good caretaker to her older two children and to the child at issue. She has a more flexible work schedule to provide care for the child. She has family support in Kirksville that can provide assistance in raising the child. *See, e.g., In re Marriage of Moyer*, No. 11–1695, 2012 WL 2412075, at *4 (Iowa Ct. App. June 27, 2012) (collecting cases discussing importance of proximity to support networks). There is no credible complaint regarding her parenting ability.

In contrast, Irwin's work schedule is not as flexible. In addition, the record reflects Irwin has a history of alcohol abuse and angry outbursts, which were causes of the parties' separation. Brown testified Irwin drank on a nightly basis and would do so in front of L.I. She testified his temper would manifest itself in front of the children, including an incident wherein Irwin struck one of Brown's older sons. On another occasion, Irwin lost his temper in a restaurant, yelled at the restaurant staff, gave money to Brown, and left the restaurant. On other occasions, Irwin would become enraged at the slightest provocations and become verbally abusive. To calm himself down, he would contact his parents. Brown's testimony was corroborated by other evidence. Irwin admitted to drinking every

night.  Irwin was twice convicted of operating while under the influence.  He broke his jaw in a bar fight.  On another occasion, he became drunk, wrecked his vehicle, and had his father pick him up and drive him home to avoid law enforcement.  Irwin admitted to striking Brown's older son, but he insisted it was an instinctual reaction to pain when the son struck Irwin's jaw, which, as previously mentioned, was broken in a bar fight.  In a text message sent to Brown, Irwin acknowledged  he had an anger problem, stating "after last night I've come to the point I'm gonna go to a doctor and get some help with my anger problem."

Irwin testified he has changed since the separation and has largely abstained from drinking, doing so on rare occasions, and never when L.I. is under his physical care.  His neighbor corroborated these claims.  However, Irwin admitted he has not sought professional help for his alcohol and anger problems.  While Irwin's changed behavior, if true, is in the best interest of the child, we cannot wholly discount his recent past conduct.  Irwin's past conduct is troubling, and it augurs against awarding him physical care when we are forced to choose between two parents, as is the case here.

Finally, awarding Brown physical care will allow L.I. to spend the maximum amount of time with his siblings.  Separation of siblings is disfavored.  *See In re Marriage of Will*, 489 N.W.2d 394, 398 (Iowa 1992).  The presumption of keeping siblings together applies with equal force to half-siblings, as is the case here.  *See In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986) (finding that the court's "strong interest in keeping children of broken homes together" applies "in cases of half siblings . . .")

On de novo review, we conclude Brown should be awarded physical care of the child, Irwin should be awarded liberal visitation, and Brown should be awarded child support in accord with the child support guidelines. We affirm the establishment of paternity of L.I. in Irwin and remand this matter to establish an appropriate visitation schedule considering the distance of the parties from each other and to recalculate child support in accord with the guidelines. We do not retain jurisdiction following remand.

We address a final issue. The parties seek appellate attorney's fees. An award of appellate attorney's fees is a matter within this court's discretion. *See* Iowa Code § 600B.26; *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997). The factors we consider include Brown's need in making the request, Irwin's ability to shoulder the cost, and the merits of the appeal. *See In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999). The factors here favor an award of Brown's attorney's fees. She prevailed on the merits of her appeal. She has annual income of $17,800. Irwin has annual income of approximately $80,900. Brown has two other sons, while Irwin has no other children. Brown has a need for appellate attorney's fees, and Irwin has the ability to pay. For these reasons, we award Brown appellate attorney's fees in the amount of $5000.

**AFFIRMED AS MODIFIED AND REMANDED.**