# IN THE COURT OF APPEALS OF IOWA

No. 21-0978
Filed June 15, 2022

IN RE THE MARRIAGE OF COURTNEY LEIGH NIEMAN
AND JAMES MICHAEL NIEMAN

Upon the Petition of
COURTNEY LEIGH NIEMAN,
        Petitioner-Appellee/Cross-Appellant,

And Concerning
JAMES MICHAEL NIEMAN,
        Respondent-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.


        James Nieman appeals the child support provisions, and Courtney Niemen cross-appeals the child support and economic provisions, of the decree dissolving their marriage. **AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**


        Joseph G. Bertogli, Des Moines, for appellant.

        Donna R. Miller of Miller, Zimmerman & Evans, PLC, Des Moines, for appellee.


        Heard by Bower, C.J., and Schumacher and Ahlers, JJ.

**BOWER, Chief Judge.**

James Nieman appeals the child support provisions, and Courtney Niemen cross-appeals the child support and economic provisions, of the decree dissolving their marriage. We affirm the dissolution of the marriage and the distribution of marital property. However, the district court's findings concerning James's income are not supported in this record. Therefore, we reverse and remand for further findings and recalculation of James's child support obligation.

**I. Background Facts.**

Courtney and James married in October 2013 and are the parents of M.N., born in 2014, and R.N., 2018. James also has shared care of his child from a prior relationship.

Courtney and the children left the family home in April 2019 after an incident where Courtney responded to screams of help from James's father. James was intoxicated and had his father on the floor and was "strangling him." When Courtney intervened, James came after her and threatened to kill her. Courtney summoned law enforcement, and James was arrested and jailed. When Courtney was notified James was going to be released from jail, she and the children hurriedly packed and traveled to Courtney's mother's home in Kansas. Courtney sought and was granted a domestic-abuse protective order. A criminal no-contact order was entered after James pleaded guilty to a charge arising from the incident.

Courtney and the children continued to reside with Courtney's mother. Courtney is a nurse and obtained full-time employment that allowed her to work from home. In November 2020, when M.N. was in kindergarten and R.N. was

enrolled in daycare, Courtney was able to accept a new position with an increase in annual salary from about $45,000 to $64,105.

James works as a construction supervisor. In late 2018, James travelled to Florida for a job that did not pan out. He returned to Iowa, did some contract work with a friend, and eventually started working for a construction firm. James entered an inpatient substance-abuse treatment program on December 21, 2019. His gross earnings for 2019 were $35,455. James discharged from inpatient treatment on January 22, 2020. He returned to work with his former employer, where he makes thirty dollars per hour. As of December 14, 2020, James's gross income for 2020 was $51,712. In January, he received a check for December 15 through 24 for $2526.

Courtney filed a petition to dissolve the parties' marriage in August 2019. She did not request temporary spousal or child support. An order "resolv[ing] all temporary matters"—including custody, visitation, and video calls by James—was filed on April 22, 2020.

Trial was held on January 7, 2021; the issues to be decided were the distribution of certain marital assets, the setting aside of inherited assets, and James's child support obligation.[1]

Courtney testified that when she left the family home she withdrew $10,000 from the bank—about half the balance of the couple's joint savings account—and took $2500 cash—one-half of the cash the parties kept in a safe at home. She

---

[1] The parties' stipulation of joint legal custody, physical care with Courtney, and supervised visitation for James was accepted by the court. Physical care and visitation issues were not appealed.

testified she used that money for "[l]iving expenses, childcare, feeding the kids." Courtney continued to pay the mortgage payment on the family home of $1255.40 every other month until February 2020. She also paid for James's health insurance through December 2019. Courtney testified she had spent $24,253.47 during the parties' separation related to the children's childcare, health and dental insurance, medical expenses, diapers, wipes, and vitamins. She asked the court to order James to reimburse her for half of that amount. She acknowledged she had used both child tax exemptions in her 2019 filing and refused to utilize the married-filing-jointly option. She asked to be allowed both exemptions for her 2020 tax filing because she had provided all of the children's support.

With respect to child support, Courtney's worksheet assumed James's gross income was $63,971 and calculated a child support amount for two children of $1003.62 per month. She asked that James also pay one-half of childcare costs for the children. She testified she intended to move out of her mother's home and into a separate residence with the children but would not be able to do so without financial assistance. She stated she had not been able to afford childcare for both children before their older child was in kindergarten and the younger child's enrollment in childcare allowed her to accept the higher-paying job.

Courtney submitted a letter from the children's current childcare center indicating the weekly cost for the older child's care was $225 per week before she entered kindergarten in September 2020, and for the younger child who was enrolled in August 2020, the cost was $240 per week. Courtney also provided the court a calculation for childcare expenses, listing a weekly cost for the older child as $80 per week for forty weeks (during school year) and $200 per week for twelve

weeks (summer months); and $240 per week for fifty-two weeks for the younger child. She calculates childcare expenses at $1506.67 per month. She testified she had researched other centers and "all of the centers around here . . . were either comparative or more."

Courtney proposed both parties keep their inherited property and James keep the marital home and pay her a portion of the equity. Courtney acknowledged the down payment for the home of $85,000 was made with James's inherited funds. Courtney testified James's April 2020 appraisal of $215,000 was outdated. She submitted a December 2020 appraisal valuing the home at $227,000. Noting equity of over $180,000, she asked that James pay her $40,886. She also proposed she be allowed to set aside the growth income on the premarital portion of her 401(k) and divide the marital portion evenly.

For his part, James contended his gross annual income from employment is accurately portrayed on his pay stub of December 18 in the amount of $51,712. He testified he does not always work forty-hours per week and a calculation of his child support obligation based upon forty-hour weeks for fifty-two weeks would not accurately reflect his income. James also asserted Courtney's mother was providing care for the children so he should not be required to pay any portion of the projected childcare costs.

The district court entered a dissolution decree in March which, in pertinent part, ordered James to pay a guideline child support amount of $1003.62 per month for child support commencing March 1, 2021, and an additional $750 per month for childcare; ruled that each party would be entitled to the growth in their premarital retirement investments; awarded a judgment in favor of Courtney and

against James for $12,126.74 as reimbursement to Courtney for her claimed one-half of the children's expenses during their separation; divided the parties' assets and liabilities; and ordered James to make an equalization payment of $40,886.

In concluding a variance from the guideline child support amount was necessary, the court wrote:

> Support is calculated according to the Child Support Guidelines (the Guidelines) based upon Courtney's annual income from all sources of $64,105.00 and James'[s] annual income from all sources of $63,971.00.
>
> Iowa Court Rule 9.11A permits the court to vary the amount of child support that would result from applying the Guidelines based upon the custodial parent's child-care expenses. "In determining whether variance is warranted under this rule and rule 9.11, the court should consider the fact that childcare expenses are not specifically included in the economic data used to establish the support amounts in the Schedule of Basic Support Obligations."
>
> Under Iowa Court Rule 9.11, the court is not to vary from the amount of child support that would result from application of the Guidelines without a written finding that the Guidelines would be unjust or inappropriate. Two criteria inform that determination: (1) "substantial injustice would result to the payor, payee, or children," and (2) "adjustments are necessary to provide for the needs of the children or to do justice between the parties, payor, or payee under the special circumstances of the case."
>
> Courtney presented credible evidence that her childcare expenses for both children is $1506.67 per month. Thus, she pays more for childcare than the child support she will receive. James presented no evidence that the cost for childcare is excessive. Courtney testified that she researched options and the cost for the facility she chose is consistent, or even a little lower, than other childcare providers. Courtney also testified she took a higher-paying job in November 2020 only because [R.N.] was put into daycare. If [R.N.] was not in daycare, Courtney would be earning less and James'[s] child support obligation for the children would be increased.
>
> The court therefore finds that deviation from the Guidelines is necessary to provide for the reasonable needs of [M.N.] and [R.N.], to do justice between Courtney and James, and because substantial injustice would result without deviation. James shall pay Courtney $750.00 per month for childcare in addition to the child support of $1003.62 per month.

James filed a motion for amended and expanded findings, asserting child support should be based on a gross income of $51,712,[2] the court's variance from the guidelines was "oppressive" and without evidentiary support, and there is no authority to order retroactive childcare where Courtney did not apply for temporary support. Courtney resisted.

The district court modified the decree in part. With respect to child support, the court ruled:

> James argues his support obligation in the Decree, coupled with a variance upward for childcare for the parties' children, is onerous. Upon reconsideration of the evidence presented, the court agrees that James'[s] support obligation should be reduced to $858.05 per month for two children and further reduced to $621.64 per month when there is only one child for support purposes.
> The court declines to reduce or vacate the childcare variance of $750.00 per month as requested by James. He is leaving the marriage with substantial assets, worth more than twice the value of the assets Courtney is leaving the marriage with. Going forward either party may seek modification if either party's circumstances related to these issues change.

As for the court's order of retroactive support, the court "vacate[d] the requirement that James pay Courtney $12,126.74 in retroactive child support."

James appeals and Courtney cross-appeals. James challenges the variance from guideline amounts for childcare expenses. Courtney asserts the court's child support calculations are faulty because James's annual gross income is greater than $51,712. She also contends it is inequitable not to order James to

---

[2] The $51,712 gross income James uses is the "YTD Amount" on his check stub dated December 18, 2020, for the pay period November 28 to December 11. Using this figure, James argued his child support payment should be $858.05 per month for two children and $621.64 per month for one child.

share in the children's expenses in 2019 and 2020. Both parties seek an award of appellate attorney fees.

## II. Scope and Standards of Review.

We review equity cases such as dissolution of marriage de novo. *In re Marriage of Mann*, 943 N.W.2d 15, 18 (Iowa 2020). We give the district court considerable latitude and give weight to the court's factual findings, but we are not bound by them. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). "We will disturb the district court ruling 'when there has been a failure to do equity.'" *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013) (citation omitted).

## III. Child Support and Variance from Guideline Amount.

James appeals the court's variance from the guideline child support amount. He contends the trial court inequitably varied from child support guidelines in ordering him to pay an additional $750 for childcare expenses. He states, "At no time during the marriage did James and Courtney ever pay over $1500 per month in daycare expenses."

Courtney cross-appeals the district court's calculations for basic child support, contending the court should recalculate support based on an income for James of $62,295. She reaches this figure as follows:

> James introduced his paystubs from 2020 to determine his income for child support purposes. James admitted that he did not start work in 2020 until January 22 because he was in treatment. Those paystubs showed that his earnings for 2020, through December 11, totaled $54,463.75. His earnings December 12 through December 25, 2020[,] totaled $2526.00. Using these [forty-seven] representative weeks (last week of January through December 25), [and extrapolating to fifty-two weeks] his average weekly income was $1197.99, making his annual income $62,295.66.

| JAMES 2020 INCOME | | notes |
|---|---|---|
| 1-27-20 - 12-11-20 = 45.571 weeks | $54,463.75 | Ex. C, p. 4 |
| 12-12-20 - 12-25-20 = 2 weeks | $2,526.00 | Ex. C, p. 5 |
| total for 1-22 through 12-25-2020 | $56,989.75 | |
| average per week for 47.571 weeks | $1,197.99 | |
| annual estimate | $62,295.66 | |

Courtney maintains the variance from basic child support guideline amounts is warranted, citing Iowa Court Rule 9.11A. Because the issues are intertwined, we address them together.

*Basic principles.* A parent has a duty to support children financially based on the parent's ability to pay. Iowa Ct. R. 9.3(1); *In re Marriage of Salmon,* 519 N.W.2d 94, 97 (Iowa Ct. App. 1994) (considering "earning capacity rather than actual earnings"). "Under the law there is a rebuttable presumption that the amount of child support which would result from the application of the [child support] guidelines is correct." *In re Marriage of Powell*, 474 N.W.2d 531, 533 (Iowa 1991); Iowa Ct. R. 9.4. To determine child support, courts calculate each party's net monthly income by taking their gross monthly income and factoring in specifically enumerated deductions. Iowa Ct. R. 9.5. The guidelines take into account the reasonable costs of living, including educational expenses, as well expenses for clothes, school supplies, and recreational activities. *In re Marriage of Gordon*, 540 N.W.2d 289, 292 (Iowa Ct. App. 1995). But "child care expenses are not specifically included in the economic data used to establish the support amounts." Iowa Ct. R. 9.11A. Under rule 9.4, the guideline "amount may be adjusted upward or downward, however, if the court finds such adjustment necessary to provide for the needs of the children or to do justice between the parties under the special circumstances of the case."

*James's gross income.* On our de novo review, we conclude it was error for the district court to use the figure James asserts is his annual income— $51,712. This figure does not show what James earns in a fifty-two week period; it does not include any income for January 1–22, because James was in treatment. He testified he returned to work the last week of January after his discharge. Nor does it include income from hours he worked from December 14–31.

It is undisputed James earns thirty dollars per hour. Using the five, biweekly paystubs provided to the court, James worked an average of 36.54 hours per week from October 3 to December 24, 2020. James testified this was representative of the number of hours he worked on a biweekly basis. While we understand James is not guaranteed forty hours per week; it is also true he sometimes works overtime, for which he gets time and a half. We have no indication James receives paid time off. If we presume James works 36.54 hours per week, his weekly income is $1096.20. So Courtney has presented a reasonable basis for finding his average weekly earnings is $1197.99. Either calculation results in an annual income exceeding the $51,721 figure the district court adopted.

Because the court's child support calculation begins with a faulty premise, we remand for a determination of James's annual income and a recalculation of child support under the guidelines.

*Variance for childcare expenses.* Rule 9.11A specifically anticipates a variance from the basic child support guidelines where a custodial parent has childcare expenses. The rule was recently amended to provide more guidance, which we find instructive here:

(1) "Child care expenses" means actual, annualized child care expenses the custodial parent pays for the child(ren) in the pending matter that are reasonably necessary to enable the parent to be employed, attend education or training activities, or conduct a job search, less any third party reimbursements and any anticipated child care tax credits.

. . . .

(3) In determining the amount of the variance, the court may consider each parent's proportional share of income. The amount of the child care expense variance allowed should not exceed the noncustodial parent's proportional share of income. The support order must specify the amount of the basic support obligation calculated before the child care expense variance, the amount of the child care expense variance allowed, the combined amount of the basic support obligation and the child care expense variance, and when the child care expense variance will end. Absent compelling circumstances, the child care expense variance should not extend beyond the time when there are no longer any children under the age of [thirteen] who are subject to the support order. When a child care expense variance ends pursuant to the terms of the support order, support will automatically adjust to the amount of the basic support obligation without a child care expense variance.

(4) When considering a variance, child care expenses are to be considered independent of any amount computed by use of the guidelines or any other grounds for variance.

(5) When a variance is ordered pursuant to rule 9.11A, no deduction for child care expenses under rule 9.5(2)(j) will be allowed in calculating either party's net monthly income to determine the amount of the basic support obligation.

(6) A change in the amount of child care expenses incurred by the custodial parent is a factor to be considered in determining whether a substantial change in circumstances exists to modify a support order that includes a variance under rule 9.11A.

Iowa Ct. R. 9.11A; *see In re Marriage of McCabe*, No. 20-1121, 2022 WL 468738, at *5–6 (Iowa Ct. App. Feb. 16, 2022) (discussing variance from child support guidelines for four children); *Jass v. Atkinson*, No. 18-1790, 2019 WL 2371925, at *7–8 (Iowa Ct. App. June 5, 2019) (noting "[r]ule 9.11A expressly cross references rule 9.11, which requires written findings to support a variance from the guidelines" and noting any "variance should have an end date").

We agree with the district court that Courtney proved the childcare expenses for both children averaged $1506 per month and those expenses were "reasonably necessary to enable the parent to be employed." The district court did not determine if the variance exceeded James's proportional share of income or state when the variance will end. Iowa Ct. R. 9.11A.

Because we are remanding for a recalculation of child support based on a different gross annual income for James, we observe the district court "may consider each parent's proportional share of income." Any variance "should not exceed the noncustodial parent's proportional share of income" and "[t]he support order must specify the amount of the basic support obligation calculated before the child care expense variance, the amount of the child care expense variance allowed, the combined amount of the basic support obligation and the child care expense variance, and when the child care expense variance will end." Iowa Ct. R. 9.11A (2022). The district court has the discretion to either hold a further hearing, decide the issue on the record made, or request additional submissions from the parties. We do not retain jurisdiction. *See McCabe*, 2022 WL 468738, at *6.

## IV. Retroactive Expenses.

Courtney asserts the court erred in vacating its initial award to her of $12,126.74, which represents one-half of the amount she expended for the children during the parties' separation. She argues her expenditures during separation may be considered as part of the division of marital property and debt, citing *In re Marriage of Decker*, 666 N.W.2d 175, 181 (Iowa Ct. App. 2003), and *In re Marriage of Nibbelink*, No. 19-0766, 2020 WL 115783, at *4–5 (Iowa Ct. App.

Jan. 9, 2020). "Expenditures made during a separation should, in some cases, be considered in making an equitable distribution." *Decker*, 666 N.W.2d at 181. We find the cited cases are distinguishable.

In *Decker*, the question was whether the spouse who had been making mortgage payments during separation was entitled to the additional equity in the marital home because of those payments. *Id.* This court concluded the spouse was not entitled to such credit in the circumstances. *Id.* The *Nibbelink* case dealt with the question of whether one spouse's post-separation credit card debt should be considered marital debt. 2020 WL 115783, at *4. Noting the spouse was receiving temporary spousal and child support, this court concluded the spouse "does not provide a reasonable basis for concluding her credit card debt was marital debt. We find no inequity under the circumstances." *Id.* at *5.

Iowa Code section 598.10 (2019) authorizes the district court to order temporary support "when a claim for temporary support is made by the petitioner in the petition, or upon the application of either party, after service of the original notice and when no application is made in the petition . . . ." Courtney made no claim for temporary support in the petition for dissolution or in her application on temporary matters. Instead, Courtney sought reimbursement for one-half of her 2019 and 2020 expenditures related specifically for the children's care. We are not aware of any authority allowing the court to grant retroactive temporary child support. We note Courtney acknowledged she could have requested temporary

child support. She also acknowledged she took $12,500 of marital funds with her when she left.[3] Equity does not require that we grant her request.

## V. Appellate Attorney Fees.

James and Courtney both seek an award of appellate attorney fees. James contends he should be awarded attorney fees because he has had "to bring the inequitable and oppressive child support variance to this court's attention." For her part, Courtney asserts James should be required to pay her attorney fees "based on lack of merit" in his arguments.

"Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). In determining whether to award appellate attorney fees, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). Neither party has submitted an affidavit of attorney fees. We conclude each party shall be responsible for their own appellate attorney fees and one half of the court costs.

We affirm the dissolution of the marriage and the distribution of marital property. However, the district court's findings concerning James's income are not supported in this record. Therefore, we reverse and remand for further findings and recalculation of James's child support obligation.

**AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**

---

[3] The district court's ruling on the motion to enlarge mistakenly states Courtney took $14,500 with her. The record does not support that finding.