## IN THE COURT OF APPEALS OF IOWA

No. 22-1105
Filed July 26, 2023

IN RE THE MARRIAGE OF BARBARA ANN CARTER
AND LESLIE EARL CARTER

Upon the Petition of
**BARBARA ANN CARTER,**
        Petitioner-Appellee,

**And Concerning**
**LESLIE EARL CARTER,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.

Leslie Earl Carter appeals the economic provisions of the decree dissolving his marriage to Barbara Ann Carter. **AFFIRMED.**

Colin McCormack of Van Cleaf & McCormack Law Firm, LLP, Des Moines, for appellant.

Barbara Ann Carter, Pleasant Hill, self-represented appellee.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

Leslie (Les) Earl Carter appeals the economic provisions of the decree dissolving his marriage to Barbara Ann Carter. He requests that we either reverse the spousal support award entirely or, in the alternative, substantially reduce it. Les also contends the district court inequitably divided the value of a home he purchased during the couple's separation. Upon our de novo review, we find the district court's order is equitable with regard to both spousal support and property distribution.

## I. *Background Facts and Proceedings.*

Barbara and Les were sixty-five and sixty-eight years old, respectively, at the time of trial. They married in 1987. They lived in the Carlisle area, and each had one child with other partners prior to the marriage. Barbara dropped out of high school in the eleventh grade when she was pregnant with her first child. She was a stay-at-home mother and occasionally worked part-time for minimum wage. Les worked full-time at a trailer company and later as a machinist. Les and Barbara had one child together in 1988.

In approximately 2006, Les moved in with his parents to help care for them. Barbara's mother resided with Barbara for some time until she passed away around 2007. Barbara moved to a home in Palmyra, while Les continued to pay for Barbara's living expenses. In 2012, Barbara moved to Sioux City to be closer to her older daughter. She testified that Les told her to go up there to be near family and that he was going to follow her there. Les paid the rent for Barbara but never moved to Sioux City.

In 2017, Barbara moved in with her brother for about six months in Carlisle. She then moved into an apartment in Pleasant Hill where she remained at the time of trial. Throughout this time, Les continued to pay Barbara's rent. He also paid for a storage unit up until the time of the temporary hearing in this matter, which occurred in October 2021. Barbara sent her annual tax documents to Les, and he filed the couple's joint tax returns.

In 2019, Les moved to Texas to be near his sister and work full-time at her electrical store selling breakers. He purchased a home there that is worth over $200,000. Les stopped working altogether at some time in 2021. He testified that this timing was merely coincidental and not related to Barbara's filing for divorce. Les explained that he needs surgery on his back and hips and hopes to return to work afterwards. He claims that he has not had the procedure yet because it took time to see various specialists and that he will schedule the surgery when he returns to Texas after trial. The district court concluded that Les was intentionally not working in order to lower his income for purposes of determining spousal support.

Barbara testified that she sought to file for divorce in 2020 but could not afford an attorney. She eventually obtained pro bono representation and filed the underlying petition in June 2021. After the temporary matters hearing, the court ordered Les to pay $513 in monthly spousal support to Barbara. In June 2022, the court entered a final decree of dissolution of marriage, which ordered Les to pay $1000 per month in support to Barbara until one of them dies. The decree also awarded the Texas property to Les but required him to pay an equalization

payment of $46,658.50 to Barbara by September 1, 2022, or else place the property for sale and split the proceeds with Barbara. Les filed a timely appeal.[1]

## II.    Review.

Because dissolutions of marriage are equitable proceedings, our review is de novo. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. *Id.* We will disturb those findings only if they fail to do equity. *Id.* "There are no hard and fast rules governing the economic provisions in a dissolution action; each decision depends upon the unique circumstances and facts relevant to each issue." *In re Marriage of Gaer*, 476 N.W.2d 324, 326 (Iowa 1991).

## III.    Discussion.

Les challenges the award of $1000.00 per month in spousal support to Barbara. We begin by noting that the district court has "considerable latitude" in fashioning or denying an award of spousal support based on the particular facts of each case. *In re Marriage of Mann*, 943 N.W.2d 15, 20 (Iowa 2020) (citation omitted). Because "the trial court [i]s in the best position to balance the parties' needs, . . . we should intervene on appeal only where there is a failure to do equity." *In re Marriage of Gust*, 858 N.W.2d 402, 416 (Iowa 2015). "[T]he imposition and length of an award of traditional [spousal support] is primarily predicated on need and ability." *Id.* at 411 (citation omitted) ("In determining need, we focus on the earning capability of the spouses, not necessarily on actual

---

[1] Barbara did not file an appellate brief. *See* Iowa Ct. R. 6.903(3) (permitting an appellee to not file an appellate brief).

income."). Les claims that Barbara failed to establish both her need for permanent support and his ability to pay such support.

With regard to Barbara's need, Les alleges that Barbara works only part time by choice and made no efforts to improve her financial situation during their extensive separation. On the contrary, Barbara testified that she only works part time because she has knee issues and arthritis. As the district court observed, "[h]er bank statements reflect a life of limited means and forced frugality. . . . She has no ability to improve her financial picture or to obtain more education or a better job."

As for Les's ability to pay, the district court made adverse credibility findings and identified significant inconsistencies. The court specifically found that Barbara was much more credible, Les appeared evasive, and Les has been less than honest about his income. Les claims a total monthly income of $1800, derived from a combination of Social Security and Veterans Administration (VA) benefits. According to his financial statements, these benefits actually total just over $2000. The district court found that Les is also receiving income "under the table," based on Barbara's testimony that Les has worked on cars as side jobs and financial statements consistent with such an enterprise. Further inconsistencies observed by the court include the following:

> Les'[s] financial affidavit does not match the documentation provided by Barbara or the testimony given in this case. In his affidavit, as well as in a sworn interrogatory, he claimed [to] have no bank accounts, yet he offered his bank statements documenting his accounts. He listed the market value for his home and truck at substantially lower than the credible evidence supports. He did not list his trailers as assets.

The court imputed Les's income at $6,916.83 per month, based on a seventeen-month average of deposits into his bank account. This window runs from July 2020 to November 2021 and reflects that Les actually brought in more money after quitting his job. Les attributes all deposits that were not from Social Security or the VA to his sister. He provided an unsworn document, purportedly signed by his sister, which asserts that he owes her $20,100. Les's sister did not testify, and there is no indication of the terms of repayment. Like the district court, we note that similar deposits were made into Les's account before the loans from his sister allegedly began in May 2021. Ultimately, we share the district court's conclusion that Les has an ability to pay spousal support. However, we find Les's monthly income is only $4,863.69, which translates to $58,364.28 annually. The district court's calculation reflects an addition error, which counted Les's Social Security and VA benefits twice.

All in all, we find the factors listed in Iowa Code section 598.21A(1) (2021) weigh in favor of awarding traditional spousal support to Barbara. The parties' marriage persisted approximately twenty years before separation, they are both of advanced age and cite various health issues, and Barbara has a limited earning capacity that prevents her from self-supporting at a standard of living comparable to that enjoyed during the marriage. *See* Iowa Code § 598.21A(1). Like the district court noted, Barbara "is not asking to live as grandly as Les; she is asking to be able to pay her essential bills." Despite the miscalculation in Les's income, we find $1000 per month is an appropriate amount of spousal support, as we venture to believe the district court did not order a higher amount because it was all that

Barbara requested. For these reasons, we affirm the district court's award of traditional spousal support.

Les also argues that the district court inequitably divided the value of the Texas home he purchased during the couple's separation. When dissolving a marriage, the district court is to equitably divide all property between the parties, with the exception of inherited property or gifts.[2] Iowa Code § 598.21(5). "An equitable property division of the appreciated value of property, should be a function of the tangible contributions of each party, and not the mere existence of the marital relationship." *In re Marriage of Bulanda*, 451 N.W.2d 15, 17 (Iowa Ct. App. 1989). Les argues that a property division should equitably divide the fruits of the parties' joint efforts but Barbara provided no support, financial or otherwise, towards this home. On the contrary, Les testified that he was able to make the down payment for this home at least in part from savings accumulated while the couple lived together. Barbara testified that she expected to retire with Les. However, Les cashed out his retirement accounts prior to Barbara's filing for divorce.[3] Despite Les's contentions regarding the parties' lengthy separation, "[t]he date of the dissolution is the only reasonable time when an assessment of the parties' net worth should be undertaken." *In re Marriage of Decker*, 666 N.W.2d 175, 181 (Iowa Ct. App. 2003). Even accounting for Les spending at least some

---

[2] We qualify this general rule by noting inherited property and gifts will also be subject to division "upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage." Iowa Code § 598.21(6).

[3] The district court found that Les cashed in his pensions, which he earned during the marriage, and received a total of $66,928. By our calculations, Les cashed in funds from an individual retirement account and a pension from 2015 to 2019 for a total of $76,321.

of the retirement funds on Barbara's living expenses, we do not find the equalization payment arrived upon by the district court to be inappropriate or inequitable.  Therefore, we affirm the order in this regard as well.

**AFFIRMED.**